ED. W. BEDFORD v. RAYNER CATTLE COMPANY.

No. 1553.

**1. Foreclosure—Verdict.**

A verdict which merely finds for plaintiff the amount of notes sued on can not support a judgment foreclosing a lien, though the evidence in its favor is undisputed.

**2. Deed—Not Quit-Claim.**

A deed by which grantors "bargain, sell, release and forever quit-claim * * * all their right, title and interest" to the land conveyed, with habendum clause "to have and to hold the said premises * * * so that neither they, the said * * * nor his heirs, nor any person claiming under them shall, at any time hereafter, have, claim or demand any right or title to the aforesaid premises or appurtenances or to any part thereof" is not a mere quit-claim deed and will estop the vendor but not the vendee from claiming under an after acquired title.

APPEAL from District Court of Knox County.   Tried below before Hon. W. R. McGILL.

The Rayner Cattle Company brought the suit against Bedford to recover on notes alleged to be given in consideration of a quit-claim deed to land, and for foreclosure of the vendor's lien thereon.   Defendant pleaded general denial and failure of title.   The court directed a verdict for plaintiff for the amount of the notes and gave judgment therefor, with foreclosure of lien, from which defendant appealed.   The appellant was in possession of the land in controversy at the time of his purchase, holding the same adversely to appellee.   The land was originally State school land.   Appellee claimed title through an application and purchase by one Martin Casey and mesne conveyances from Casey to appellee.

*Coombes & Coombes*, for appellant.—Whether the deed of conveyance from the appellee to the appellant was intended to convey the land itself or merely the chance of title was a question of fact to be determined by the jury, not only from the deed itself but from all the facts and circumstances before them leading up to the execution of the deed. Harrison v. Boring, 44 Texas, 262; Taylor v. Harrison, 47 Texas, 461; Garrett v. Christopher, 74 Texas, 453.

Where there is a total failure of title on the part of the vendor the vendee may, if the contract be executory, refuse to perform it, and reclaim any portion of the purchase money he may have advanced.  House v. Kendall, 55 Texas, 44; Palmer v. Chandler, 47 Texas, 332; Twohig v. Brown, 85 Texas, 51.

Where the vendor sells what proves to be public domain the vendee is not estopped from acquiring the land from the State in his own right, and he may sue for and recover back the purchase money which was paid for it, though at the time of the sale both parties supposed the land in fact belonged to the vendor.   Palmer v. Chandler, 47 Texas, 434; Rodgers v. Daily, 46 Texas, 583; Wheeler v. Styles, 28 Texas, 241; Howard v. McKenzie, 54 Texas, 188.

For a purchaser to acquire any right to or title in State school lands under the Act of July 14, 1879, and the act amendatory thereof, approved April 6, 1881, the land must have been duly appraised by the surveyor of the proper land district, said appraisement duly returned to and approved by the Commissioner of the General Land Office, and be duly placed upon the market by the Commissioner of the General Land Office, the application to purchase must have been duly made and the first purchase money paid or tendered prior to the 22d day of January, 1883. Act July 8, 1879, Chapter 28, page 23 to 25, Special Session Sixteenth Legislature; Article 3976b, Rev. Civ. Stats.; State v. Work, 63 Texas, 149.

The court erred in rendering judgment foreclosing the lien on the land. The judgment must conform to and be supported by the verdict of the jury. Rev. Stats., art. 1335; May v. Taylor, 22 Texas, 349; Bledsoe v. Wills, 22 Texas, 651; Preston v. Breedlove, 45 Texas, 50; Handel v. Elliott, 60 Texas, 147.

*Holman & Montgomery,* for appellee.—The evidence shows conclusively that the appellant was in possession of the land, claiming adversely to appellee, and denying appellee's title, and that under such circumstances the appellant purchased only the title or interest of appellee in the land, and that the transaction was in effect a compromise of the conflicting claims of appellant and appellee to the land in controversy, and therefore the defense of failure of consideration would not lie against this suit on the notes executed by appellant in said settlement. 3 Am. & Eng. Encyc. of Law, 837, and note; 1 Parsons, Cont., 439; Bank v. Geary, 5 Pet., 98; Grandin v. Grandin, 9 Atl. Rep., 756; Finley v. Funk, 12 Pac. Rep., 15; Richardson v. Dist. of Hampton, 31 N. W. Rep., 871; Pegues v. Haden, 76 Texas, 99; Camoron v. Thurmond, 56 Texas, 33; Leading Cases in Equity, 1675; Little v. Allen, 56 Texas, 139.

That the evidence shows in fact a compromise agreement we refer to the following authorities: Finley v. Funk, 12 Pac. Rep., 15; Camoron v. Thurmond, 56 Texas, 33; French v. Shoemaker, 14 Wall., 314; Bennett v. Pain, 5 Watts, 261; Little v. Allen, 56 Texas, 139.

COLLARD, ASSOCIATE JUSTICE.—The statement of the case as made in appellant's brief is correct and concurred in by appellee.

The note was executed as stated in the petition, and the amounts paid as alleged. The deed of the company to Bedford, dated 24th day of July, 1890, recited the consideration as $138.20 paid, and $552.80 secured and to be paid by his promissory note of even date, bearing ten per cent interest per annum from date, due 24th of July, 1894, payable in four installments of $138.20 of principal and all interest, on the 24th days of July, 1891, 1892, 1893 and 1894, respectively; these payments represented by four coupon notes attached, numbered from 1 to 4. The granting clause of the deed is in these words: "do by these

presents bargain, sell, release and forever quit-claim unto the said Ed. W. Bedford, his heirs and assigns, all their" (the company's) "right, title and interest in and unto that tract or parcel of land," etc. The habendum clause reads: "To have and to hold the said premises, together with, all and singular, the rights, privileges and appurtenances to the same in any manner belonging, unto the said Ed. W. Bedford, his heirs and assigns, so that neither they, the said Rayner Cattle Company, nor his heirs, nor any person claiming under them shall, at any time hereafter, have, claim or demand any right or title to the aforesaid premises, or appurtenances, or to any part thereof." The land upon which the lien is sought to be foreclosed is described in the petition in Knox County, Section No. 90, Block 45, H. & T. C. Ry. Co., Martin Casey original grantee, Certificate No. 28, 1851.

The land was appraised on July 11, 1881, by D. H. Jones, surveyor of Baylor Land District, which appraisement. was on August 8, 1881, approved by the County Commissioners' Court of Baylor County. The appraisement valued the land at $1.00 per acre, does not class it as watered, dry, agricultural, grazing or timbered. The number of acres are given, 640 acres, and the soil is described as "red sandy in smooth prairie." There were a number of other sections included in the appraisement, and it was received by the Commissioner of the General Land Office, examined and approved by him August 30, 1881, for 180 sections (one half) only, the other half being in conflict and withheld from sale by the commissioner until the conflict was removed. On 26th day of December, 1882, Martin Casey made application to purchase the land to the surveyor of the Baylor Land District, under the Act approved July 8, 1879, to provide for the sale of school lands, simply describing the land as section No. 90, block 45, in Knox County, and showing that it had been appraised at $1.00 per acre; which application was received by the surveyor on the 26th day of. December, 1882, and recorded same day. It was shown by the receipt of the State Treasurer, F. R. Lubbock, that Martin Casey paid the first payment, $32, on the section of land, under the act providing for the sale of public school lands, approved April 6, 1881. It was agreed by the parties that on the 24th day of July, 1883, Adams & Leonard sued, in the District Court of Baylor County, the Houston & Texas Central Railroad Company to recover all lands in blocks two and three of the Dallas & Wichita Railroad Company's surveys in Knox County which were in conflict with blocks forty-four and forty-five of the surveys made by the Houston & Texas Central Railroad Company; that the venue of the suit was changed to Travis County, and on the 13th day of. January, 1892, judgment was rendered in favor of plaintiffs Adams & Leonard, against the defendant, for the recovery of the land, and that the named parties, plaintiff and defendant, were the only parties to the suit; that the judgment is in full force and effect as between the parties, and unappealed; that plaintiff's agent paid first .installment of the purchase money for the land upon which the lien is

sought to be foreclosed—with the agreement with the Commissioner of the General Land Office that the certificate of purchaser should have endorsed thereon that it was issued subject to the decision of the courts in the case now pending; and that plaintiff's agent did receive from the Commissioner of the General Land Office said certficate of purchase so indorsed.

By letter of date "Aug. 30 . . . . . . . . 1." The Commissioner of the General Land Office notified D. H. Jones, surveyor of Baylor Land District, that the surveyor's tabulated report of valuation of school land in Knox County had been received, examined and approved for 180 sections, 180 other sections being in conflict, block 2, Dallas & Wichita Railroad Company reported as covering the same land as block No. 45, Houston & Texas Central Railroad Company and block No. 3, Dallas & Wichita Railroad Company as the same is a portion of block 44, Houston & Texas Central Railroad Company, "and this being the case" the letter states, "all of surveys included in these four blocks must be withheld from sale and must be so marked on your records, until the conflict is removed. These lands cannot be sold; with this exception you are hereby authorized to receive applications for the purchase of said lands as provided by law." This letter was received by the party to whom it was addressed in five days after its date. Block 45 of the Houston & Texas Central Railroad Company and block 2 of the Dallas & Wichita Railroad Company conflict, and section 90 of block 45 of the Houston & Texas Central Railroad Company is in the conflict.

On the 5th day of February, 1887, Martin Casey, the original applicant for the purchase of the section of land No. 90, by deed, conveyed his claim to Rayner Cattle Company, describing the claim as "all my right, title, interest and claim in and to, etc., describing the land; the deed states that the grantee assumes all future payments to be made on the land. It contains no covenant of warranty.

Defendant Bedford on January 28, 1893, made application to purchase section 16, block 2, of the Dallas & Wichita Railway Company surveys in Knox County, as an actual settler thereon under the Act of April 1, 1887, and acts amendatory thereof, approved April 8, 1889, and April 28, 1891, and made his note for $1300.65, for balance of purchase money, under the provisions of the law. With the application and note, the award of the Commissioner of the General Land Office was read in evidence by defendant. He made first payment, $33.35, on the section, as shown by the receipt of W. B. Wortham, State Treasurer, of date February 9, 1894. In the spring of 1890 the section 90 was worth, at a reasonable valuation, two dollars per acre; i. e., in April, 1890. Defendant Bedford testified that he first bought section 90, block 45, of the Houston & Texas Central Railroad Company surveys from J. Rawdon, to whom it had been awarded by the State as an actual settler. But learning from the General Land Office that J. W. Rawdon had surrendered his claim to the section, and the money he had paid had been refunded to him, and that the Land Office recognized the Casey file, and

desiring to own the land, and finding Rayner between him and a perfect title he went to Mr. Rayner, the agent of the Rayner Cattle Co., and told him that he wanted to purchase the land. Rayner replied that he would not entertain any verbal proposition, but directed him to go home and submit a proposition in writing and Rayner would forward it to the company, when they would either accept the proposition or reject it and submit one to him, Bedford, and he said to Bedford, "you know as much about the title to the land as we do. You think you have the title and we think we have it." Bedford replied that he did not think he had any title, and he further testified, "I submitted them a proposition, which they rejected, and they then tendered me a proposition, which I accepted. The result of the negotiation was that I bought the land and executed my notes in payment therefor. I gave them for the land $691.20, and assumed the balance due the State, as I understood, from Rayner Cattle Company, $608.20. There were 640 acres of land in said section 90. The amount I agreed to pay for the land was about its reasonable value at the time." He paid plaintiff the first installment falling due, amounting to $193.80. "When he found plaintiff had no title," as he testified, he applied for its purchase from the State as an actual settler thereon. The letter from Treasurer F. R. Lubbock, of date July 8, 1889, was in his possession before the negotiations and trade with the Rayner Cattle Co. Section 16, block 2, of the Dallas & Wichita Railway Company conflict with and cover section 20, block 45, of the Houston & Texas Central Railroad Company surveys.

Bedford also testified that the deed received by him and the notes sued on were exactly according to the contract and contains the term of the contract made, and all of it. The foregoing are all the facts now necessary to be noticed.

The case was tried by a jury. The court charged the jury to find for plaintiff the amount of the note, principal, interest and attorney's fees. The jury returned a verdict, as directed, for $707.65, principal and interest, and $70.96 attorney's fees. The verdict was received by the court, but upon inspection of the notes and petition, the court concluded, as stated in the judgment, that the jury had made a mistake in estimating the amount due on the note, and deciding that the amount due on the notes was only $618.58, principal and interest and attorneys' fees, judgment was rendered for that sum, the plaintiff having, in open court, remitted the sum of $162.03 of the amount found by the jury, and the court also rendered judgment foreclosing the lien on the land as prayed for in the petition. Defendant Bedford has appealed.

*Opinion.*—1. The assignment of error that the court erred in foreclosing the lien upon the land must be sustained. There was no verdict authorizing the judgment. The verdict in a jury trial must furnish the basis of the judgment, and if the issues are adjudged, not found in the verdict, the judgment is erroneous. Morrison v. Van Bibber, 25 Texas Sup., 153; Barnett v. Caruth, 22 Texas, 174; Akin v. Jefferson, 65

Texas, 141; Claiborne v. Tanner, 18 Texas, 79; McConkey v. Hender-
son, 24 Texas, 214; Preston v. Breedlove, 45 Texas, 50; Handel v.
Elliott, 60 Texas, 147; Dodd v. Gains, 82 Texas, 432.

Defendant's general denial put in issue the lien, and a jury having
intervened to determine the issues of fact the judgment of the court fore-
closing the lien without a finding upon the issue is erroneous and must
be reversed.   The court could not look to the evidence, however clear,
or in whatever form, to supplement the verdict.   Because of this error
in the judgment of the court below it must be reversed.

2.   In view of the habendum clause in the deed to Bedford we are not
prepared to hold that the court's charge in instructing the jury that it
was a quit-claim deed, purporting to convey only the company's right,
title and interest in the land, was correct.   In the case of Garrett v.
Christopher, 74 Texas, 453, the deed under discussion contained a grant-
ing clause very similar to that in the deed to Bedford, defendant in this
case, but the habendum clause in the case cited was "To have and to
hold the above described premises unto the said C. Von Carlowitz, his
heirs and assigns forever."   The court in that case held that the lan-
guage in the habendum clause made it clear that the grantors intended
to convey the land itself, and that the deed was not a simple quit-claim.
The habendum clause in the deed to defendant—"To have and to hold
the said premises together with all and singular the rights, privileges and
appurtenances"   *   *   *   "to the same in any manner belonging,"
etc., would, under the decision cited, have the effect to convey the land.
But whatever may be the meaning of the word "premises" in the deed,
whether it signifies the title conveyed or the land itself, other language
therein clearly imports more than a mere quit-claim.   Omitting a part of
it, it would read: "To have and to hold   *   *   *   unto the said Ed. W.
Bedford his heirs and assigns so that neither they, the said Rayner
Cattle Company, nor its heirs, nor any person claiming under them,
shall at any time hereafter claim or demand any right or title to the
aforesaid premises or appurtenances, or to any part thereof."

Under this last quoted part of the deed the grantor would be estop-
ped from holding the land under an after-acquired title, against the ven-
dee, nor would the vendee be estopped from claiming under another
title.   The prominent effect of a quit-claim deed is that the vendor is
not thereby precluded from subsequently acquiring a valid title to the
land and enforcing it against his vendee, and the vendee is not estopped
from denying that he received any estate by the deed.   1 Devlin on
Deeds, sec. 27; 2 id., 837.

3.   This case was tried and judgment rendered prior to the decision
of the Supreme Court in the case of Lamb v. James, 87 Texas, 485, and
consequently the court below did not have the benefit of the law as de-
clared therein on the trial.   We are not in a position to apply the rules
of that case to this, because the record before us does not purport to
show all that was done in order to procure a valid or invalid title under
the Casey application to purchase the land as section 90 of the public

school land surveyed by the Houston & Texas Central Railway Company. If the facts purported to show all that was done under that application we could pronounce on the validity of that title. To bring this case within the case cited it must be shown that the Casey title failed. Hence we withhold any opinion as to the application of the principles of the case cited to the case at bar.

Because of the error herein pointed out the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

Decided May 27, 1896.