### JACKSON v. JACKSON et al.

### No. 3596.

Court of Civil Appeals of Texas. El Paso.

Feb. 10, 1938.

Rehearing Denied March 10, 1938.

Schluter & Singleton, of Jefferson, for appellant.

Chauncey & Chauncey and W. B. Chauncey, all of Wichita Falls, for appellees.

NEALON, Chief Justice.

Appellant, John T. Jackson, who was plaintiff in the district court, brought suit in trespass to try title in the usual form to recover a described tract of 82 acres in Marion county. All of appellees were defendants. Defendants (appellees) Martha Jackson, a feme sole, Walter Jackson, Georgia Clements and husband, and Debry Arnold and husband, answered by general demurrer, general denial, and plea of not guilty, and by cross-action in common form, and by pleas of the 3, 5, 10, and 25 years' statutes of limitation, Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519, sought judgment for title and possession. The defendants also filed an affidavit of forgery as to C. T. Jackson's signature to a deed from J. S. Jackson, C. T. Jackson, and W. F. Jackson, under which appellant claimed. By amendment plaintiff pleaded the 25 years' statute of limitation in bar of defend-

645

ants' alleged right to recover on their cross-action and as part of plaintiff's title.

The case was submitted to a jury upon two special issues. In response to the first the jury found that C. T. Jackson signed the deed which had been attacked as a forgery. In response to the second the jury found against defendants upon their claims based upon the 10 years' statute of limitation.

The court rendered judgment non obstante veredicto in favor of defendants and against plaintiff, both upon the action of plaintiff and the cross-action of defendants, and quieted defendants' title to the land as against the claims of plaintiff. From this judgment plaintiff appealed.

C. T. Jackson, who was the father of defendants (except Martha Jackson) and the uncle of plaintiff, was the common source of title, since plaintiff claimed under a deed from said C. T. Jackson, W. F. Jackson, and J. S. Jackson. Martha Jackson is the widow of C. T. Jackson.

Defendants introduced in evidence a deed from N. J. Hall, alleged to be an heir of Joseph Jackson, deceased, and W. A. Hall, her husband, conveying to C. T. Jackson all her interest in the Alexander Allbright headright, of which the land in controversy is a part. There was evidence that the said N. (Nora) J. Hall had occupied and claimed a part of the 82 acres. This deed was executed in 1901, while the deed under which plaintiff claimed from C. T. Jackson was executed in 1889, and contained a covenant of general warranty. The evidence as to adverse possession was conflicting.

### Opinion.

■ We think the court erred in entering judgment for defendants. The record shows but three claims to title in behalf of defendants: (1) The alleged limitation title, which was eliminated by the jury's second finding; (2) a claim to such portion as Nora J. Hall inherited, which was eliminated by the general warranty of C. T. Jackson, since the title acquired by C. T. Jackson subsequent to the delivery of his warranty passed eo instante to his warrantee (Baldwin v. Root, 90 Tex. 546, 40 S.W. 3), and the estoppel resulting from the deed and warranty estopped his privies, whether in blood, in estate, or in law, from asserting the after-acquired title against appellant (Lindsay v. Freeman, 83 Tex. 259, 18 S.W. 727; Robinson v. Douthit, 64 Tex. 101);

and (3) the claim of all of defendants, except Martha Jackson, as heirs of their father, C. T. Jackson. Martha Jackson being the widow did not take title to any portion of the fee by inheritance from C. T. Jackson. The record shows that whatever title in the Allbright survey was owned by C. T. Jackson (except whatever he may have acquired through Nora J. Hall) came by descent, and was, therefore, separate estate.

An attack was made, however, upon the claim of plaintiff upon the ground that he did not connect with the sovereignty of the soil. He introduced in evidence: (1) The patent to Alexander Allbright. (2) A transfer of headright certificate from Alexander Allbright to John Jackson. (3) Quitclaim deed from Silas Jackson to Aaron Jackson, dated December 5, 1887, filed for record January 14, 1895, conveying all of the said Silas Jackson's interest in the Alexander Allbright headright. (4) Quitclaim deed from Margaret Jackson, widow of M. Jackson, to Aaron Jackson of all her interest in the "John Jackson heirs'" tract of land in Marion county. (5) Deed from W. F., C. T., and J. S. Jackson to plaintiff conveying the land in controversy. (6) A deed from Aaron Jackson in behalf of himself and Oliver Loyd Joseph Jackson, Silas Jackson, Emiline Jaggers, Hester A. Willis, Moses Jackson, and Sarah J. Jackson, who are therein declared to be the children of John Jackson and Mary Jackson, which deed was acknowledged October 21, 1874, filed for record October 22, 1874, and recorded in Volume 10, page 66, of the records of Marion county. This deed was admitted without objection, and, we suppose, for the purpose of creating a presumption as to what persons were heirs of John Jackson, article 3726a, Vernon's Ann.Civ.St. (7) Certified copy of judgment by the district court of Harrison county, in which there was set apart to Aaron Jackson and seven other Jackson heirs 3 lots or blocks of land, the first having an area of 210 acres, the second of 274 acres, and the third of 403 acres.

■ Appellees insist that the judgment in partition is insufficient to constitute a muniment of title upon the ground that it does not fix definitely the location of the land sued for. In view of our opinion that C. T. Jackson was the common source, we think this immaterial; the presumption being that the title outstanding prior to the execution of the conveyance to the plaintiff by the common source had passed into C.

646

T. Jackson. A somewhat similar question arose in the case of Cocke v. Texas & N. O. Railroad Company, 46 Tex.Civ.App. 363, 103 S.W. 407, 408, writ of error refused; it being claimed that superior title to a tract of land in controversy was in the heirs of John Austin, and therefore was, as to the plaintiff in that case, paramount outstanding title. We quote from the opinion of the Galveston Court: "This assignment is based upon the contention that the proceedings in the administration of the estate of John Austin in the probate court of Brazoria county did not pass the title of John Austin in the land in controversy. The record shows that plaintiff in error claims title under a common source with defendants in error; and, such being the case, he could not defeat a recovery by defendants in error by merely showing that a person other than the common source at one time held the title, but he must go further and show at least prima facie that the common source was without title, the presumption being that the title so shown to have existed in another person had passed to the common source. Under this rule it may be conceded that the administration proceedings did not divest the title of the heirs of John Austin in the land, and yet the presumption remains that the Allens, under whom the parties to this suit all claim, in some way acquired the title of said heirs, and this presumption is not rebutted by any evidence in the record. Rice v. Railway Co., 87 Tex. [90], 93, 26 S.W. 1047, 47 Am.St.Rep. 72; Foster v. Johnson, 89 Tex. [640], 647, 36 S.W. 67."

We think the rule stated in the cited case controls in the instant case. In conformity with this holding judgment of the district court is reversed, and judgment is here rendered in favor of plaintiff and against the defendants.