CLEO MASON HAMILTON V. NORMAN HAMILTON

No. A-4760. Decided March 9, 1955.
Rehearing overruled July 13, 1955.
(280 S.W. 2d Series 588)

512

*Wynne & Wynne* and *Angus G. Wynne,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that Norman Hamilton was not barred from claiming a constructive trust in any of the property of W. B. Hamilton, deceased, and in holding the property settlement and deed by Norman Hamilton to his father did not effectually settle and terminate the property rights of the parties including any constructive trust that Norman Hamilton may have claimed up to the date of the dissolution agreement, release and general warranty deed; also in rendered judgment for Norman Hamilton because he had entered into a dissolution contract with his father wherein he had agreed to release all property to his father, "free and clear of

claims, rights and demands upon the part of the said Norman Hamilton." Baldwin v. Root, 90 Texas 546, 40 S.W. 3; Nimmo v. Davis, 7 Texas 26; Garza v. De Montalvo, 147 Texas 525, 217 S.W. 2d 988.

*Strasburger, Price, Kelton, Miller & Martin* and *Royal H. Brin, Jr.*, all of Dallas, for respondent.

Since petitioner did not plead estoppel nor request special issues thereon nor meet the burden of proof to establish same it was not error for the Court of Civil Appeals to reverse the judgment non obstante veredicto rendered by the trial court. Smith v. United Gas Pipeline Co., 149 Texas 69, 228 S.W. 2d 139; Burton v. Roberson, 138 Texas 562, 164 S.W. 2d 524; Hicks v. Brown, 136 Texas 399, 151 S.W. 2d 790.

MR. JUSTICE CULVER delivered the opinion of the Court.

We are concerned here indirectly, at least, with two separate and distinct causes of action.

First, the petitioner, Cleo Mason Hamilton, surviving wife of W. B. Hamilton and principal beneficiary of his last will, offered the will for probate. Norman Hamilton, the respondent and son of W. B. Hamilton by a previous marriage, contested the application on the ground of mental incapacity and undue influence, and apealed to the district court from an order admitting the will to probate.

Second, Norman Hamilton filed suit in the district court against Cleo Hamilton, individually and as independent executrix, grounded upon a contract alleged to have been made by W. B. Hamilton with his first wife, Mary Lou, binding each to will and bequeath to their son, Norman, all property owned by them at the time of their deaths. It was alleged that pursuant to this agreement each made a will on or about February 3, 1938, Mary Lou's being in holographic form devising everything to Norman, while W. B.'s typewritten will appointed Norman independent executor and provided that all property should pass by the laws of descent and distribution. Norman was the only child of this marriage.

It was alleged that the holographic will was replaced by one drawn up in the office of Hamilton and Hamilton (father and son) and executed by Mrs. Mary Lou Hamilton on the 29th day of October, 1941, without substantial change.

Mary Lou Hamilton died on the 17th day of January, 1944, and her half of the comunity estate vested in Norman.

As beneficiary Norman sought in this suit to have the court declare the contract made between his father and mother valid and binding, entitling him to all the property owned by W. B. Hamilton at the time of his death. He prayed that a constructive trust be declared to exist in his favor upon such property that was in or should come into the possession of Cleo Mason Hamilton individually or as independent executrix.

The two cases were consolidated and tried as one cause. A jury found the facts to be as follows:

(a) W. B. Hamilton did not possess testamentary capacity,

(b) No undue influence was exerted by petitioner, Cleo Mason Hamilton;

(c) W. B. and Mary Lou Hamilton agreed to will and bequeath their respective estates to Norman;

(d) Mary Lou Hamilton performed that agreement.

The court first entered judgment on this verdict for Norman Hamilton in both phases of the consolidated cause. Petitioner's motion for new trial having been heard the court reformed its judgment, severed the two causes, granted petitioner a new trial in the will contest case and rendered judgmnt n.o.v. in favor of petitioner in the contract case. A new trial in the will contest case was granted for the reason that the jurors "made a unanimous clerical error in answering Special Issue No. 1." It appears that while the jury voted to answer that Hamilton did possess testamentary capacity, inadvertently the foreman had entered the word *"no"* instead of *"yes."* The trial court was of the opinion that Norman Hamilton, by entering into a partition agreement with his father, W. B. Hamilton, had estopped himself from laying claim, under the contract between W.B. and Mary Lou, to the property owned by his father at the time of his death.

The Court of Civil Appeals reversed and rendered that judgment holding (a) that estoppel, not having been plead originally, could not be raised for the first time on motion for new trial; (b) that under the contract Norman was entitled to whatever property his father might own at the time of his death; (c) that

by executing the partition agreement and the deeds incidental thereto, Norman did not convey nor relinquish any right of inheritance that accrued to him by virtue of the contract.[1] We affirm the judgment of the Court of Civil Appeals.

The first five points brought forward by petitioner assert error on the part of the trial court (a) in severing the two causes, (b) in entering judgment for petitioner in the contract case and (c) in granting a new trial in the will contest case. It is maintained that the two causes having been consolidated "by written contract and agreement" of the parties and approved by the court, and the two causes having been tried as one, the court was without authority to sever. It is urged that respondent on the trial had introduced a great deal of testimony tending to show immorality, improper conduct and lack of integrity on the part of deceased Hamilton that was prejudiced to petitioner in the determination of the contract case and that would have been inadmissible in the contract case if it had been tried separately. In other words, petitioner says that respondent, having thereby obtained the benefit of the consolidation, it would be inequitable and unfair to permit a severance, and thereby accept the jury's verdict in so far as the issues in the contract case are concerned, tainted with the evidence that would have been inadmissible on any issue in the contract case.

In short, the petitioner insists that inasmuch as a new trial had to be granted in the will contest case, the findings of the jury which were adverse to petitioner in the contract case should not be allowed to stand and a new trial ought to have been granted in both.

We think there is a little merit to this contention. These points are overruled for the following reasons:

1. T. R. C. P. No. 11 provides:

"No agreement between attorneys or parties touching any suit pending will be in force unless it be in writing, signed and filed with the papers as a part of the record, or unless it be made in open court and entered of record."

■ The record discloses that the attorneys filed a motion to consolidate the two causes. On the same day an order of consolidation was signed by the judge, bearing the notation "approved" by attorneys for both parties. Even if this constituted an

1.—269 S.W. 2d 491.

"agreement" in contemplation of the foregoing rule, we do not perceive how it could be interpreted as binding upon either party not to move for a severance later, or to object to a severance ordered on the court's own initiative, regardless of future development or changed conditions that might come about. It would be nothing more than an agreement to consolidate and try both causes as one and this was accomplished.

■ 2. Agreement of counsel with respect to consolidation of causes is, of course, not binding on the court. The Rules of Civil Procedure bestow upon the trial courts broad discretion in the matter of consolidation and severance of causes. Rules 37 to 43, 94 and 174, Wilson v. Ammann & Jordan, Texas Civ. App., 163 S.W. 2d 660 (error dismissed) ; Rose v. Baker et al, 143 Texas 202, 183 S.W. 2d 438.

The trial court's action in such procedural matters will not be disturbed on appeal except for abuse of discretion. Montgomery v. Willbanks, Texas Civ. App., 202 S.W. 2d 851, refused n.r.e.; Skirvin v. Mesta, 141 Fed. 2d 668; Williams v. Carter, 176 S.W. 2d 580, refused want of merit.

■ 3. From the nature of the two causes it seems rather obvious that some of the testimony admitted in the trial of the consolidated causes which tended to reflect upon the character of the parties would have been admissible in either cause if tried separately. At any rate the petitioner is the one who sought and proposed the order of consolidation and did not ask the court to give any instruction to the jury limiting the consideration of the testimony introduced.

4. In spite of the admission of the testimony claimed to be prejudicial the jury answered both issues in the will contest case in favor of the petitioner. We therefore believe that she is in no position to show any injury.

■ In short, we think the trial court did not abuse its discretion when, having determined that a new trial was necessary in the will contest case and that no error had been committed so far as the contract case was concerned, deemed it proper to grant the new trial only in the will contest case and severed the two causes of action.

For some time after the death of his mother, Norman and his father operated the farm lands that formerly belonged to the estate of his father and mother under a partnership agree-

ment. After the marriage of W. B. Hamilton to petitioner, the father and son agreed in writing to terminate this partnership and to partition the lands between themselves. Pursuant to this contract they executed warranty deeds each to the other. The pertinent paragraph in the contract reads:

"That William B. Hamilton is to have and take all of the lands aggregating approximately 746 acres situated in Dallas County, Texas, together with all improvements thereon, *free and clear of all claims, rights and demands upon the part of the said Norman Hamilton.*"

A similar paragraph provides that Norman is to have the Bosque County lands "free and clear of all rights, claims and demands on the part of the said William B. Hamilton."

Under Points 6 and 7 briefed together petitioner says the Court of Civil Appeals erred (a) in holding that Norman Hamilton was not barred from claiming constructive trust in any of the property of W. B. Hamilton, deceased, (b) in holding that the property settlement and partnership dissolution contract, release and warranty deeds did not effectually settle and terminate the property rights of the parties, including any constructive trust that Norman Hamilton might have claimed, and (c) in rendering judgment for respondent because Norman had no cause of action under his claim for constructive trust until he first acquired a judgment setting aside the release, the contract of dissolution and the general waranty deed covering the property.

Petitioner argues under these points that when Norman executed the warranty deed he was conveying a fee simple estate and any after-acquired title would inure to the benefit of his grantee and that before Norman could recover the land he would have to set aside his release. contract and deed.

Respondent, on the other hand, does not claim that any property was held in trust for him by his father, constructive or otherwise. He maintains that the contract, made between W. B. Hamilton and his first wife for the benefit of Norman, merely bound W. B. Hamilton to leave by will to Norman whatever property he might have at the time of his death. In the meantime, so it is argued by respondent, W. B. Hamilton could make *any disposition of his property he desired during his lifetime.* He could sell it, give it away or expend it any way he saw fit. All that Norman would have or would be entitled to was such

property, if any, as W. B. Hamilton owned at the time of his death and no more. Consequently respondent urges there was no property held in trust, that he had no present *vested* interest in the property of W. B. Hamilton that he could dispose of or convey at the time of the making of the contract between him and his father.

Petitioner relies on Curtis v. Aycock, Texas Civ. App., 179 S.W. 2d 843, wr. ref. w. m. In that case the court held that the will jointly signed by Aycock and wife did not constitute an enforceable contract between the makers in so far as the devises therein contained were concerned. That fact is sufficient, therefore, to distinguish the case from the one under consideration here. In addition the contract and conveyances between Mrs. Aycock and her son were said to be "a settlement of all claims arising out of the holding of said properties, the handling and collection of rents therefrom and of all claims asserted and that might thereafter be asserted by the son." By the terms of this settlement the son received property far in excess of the value of the one-fourth interest which was devised to him in trust under his father's will. After the husband's death Mrs. Aycock held one-fourth of the community estate in trust for her son and three-fourths in her own right in fee simple. While not necessary to the decision the Court of Civil Appeals goes on to say that even if the will should be construed as contractual in its nature, no reason is known why the son could not alienate his expectancy by a valid contract. While it is not to be said that this statement is incorrect as a legal proposition, we are convinced that it has no application to the facts at bar.

Among the other cases cited, for instance Deaton v. Rush, 113 Texas 176, 252 S.W. 1025, holds that no suit for recovery of the land could have been maintained before the cancellation of the deed; Garza v. De Montalvo, 147 Texas 525, 217 S.W. 2d 988 and Chace v. Gregg, 88 Texas 552, 32 S.W. 520 are to the effect generally, that partition deeds are put in a special class by the decisions of this state and are not subject to some of the formalities usually required of conveyances of real estate, but nevertheless are binding contracts and are subject to the usual rules of construction to determine their scope and application.

This petitioner insists that the covenants of warranty in a deed convey a fee simple title and that an after-acquired title inures and immediately passes to the benefit of the grantee, citing Scates et al v. Fohn et al, Texas Civ. App., 59 S.W. 837,

also Balwin v. Root, 90 Texas 546, 40 S.W. 3; Jackson v. Jackson, Texas Civ. App., 114 S.W. 2d 644; Gottwald v. Warlick, Texas Civ. App., 125 S.W. 2d 1060 and Bedford v. Rayner Cattle Co., 13 Texas Civ. App. 618, 35 S.W. 931. These general propositions are correct but not decisive of our case.

■ It seems to be the law generally that a partition deed does not operate as a conveyance or transfer of title, the effect being to divide the property and to give to each the share which he already owned by virtue of some prior deed or other conveyance. French v. French, Texas Civil App., 188 S.W. 2d 586, er. ref.; Jones v. State, 5 S.W. 973, the reason being that the parties already owned their respective interests and a partition deed from one to another is not the conveyance of title but merely the division of the property so that each may have exclusive use and occupancy and the right to dispose of as he sees fit his own land, to make it in a form certain instead of an undivided interest in the whole. Cleveland v. Milner, 141 Texas 120, 170 S.W. 2d 472.

■ The deeds from father to son and from son to father use the same language, that is to say, each was in the form of a general warranty deed. The contract used the same language in referring to what W. B. Hamilton would take and what Norman Hamilton would take, providing that each was to have the land described "together with all improvements thereon free and clear of all claims, rights and demands" upon the part of the other.

As pointed out by the Court of Civil Appeals either party could have resorted to the courts for an enforced partition and to each would have been set apart his undivided one-half interest by the court. The voluntary partition it seems, would have more effect to convey to or divest from either any more property, claims or causes of action than would result from the enforced partition in the courts.

There is nothing to indicate that the parties had in mind anything more than a completely effective dissolution of their partnership and a division of their jointly owned property. The contract was consummated by the execution of warranty deeds, the common and accepted way of partitioning lands voluntarily.

A reasonable construction of this contract is that he did not intend to create a trust in favor of his son or to deprive himself throughout his life of the power to use his property as men would ordinarily do. The contract to devise his property to the

son did not restrict Hamilton's right to use and enjoy his estate in his normal business affairs or for his wants, needs and convenience. He had the power to convey, mortgage, invest, reinvest, and even to make reasonable gifts. The son could not complain of the estate were depleted by poor business investments. The contract was not to leave any specific property or any amount of property and probably the only restriction upon Hamilton was that he could not give away his property with the intent to defraud and thus avoid his obligation under the contract. Dickinson v. Lane, 193 N.Y. 18, 85 N.E. 818, 20 L.R.A. N.S. 1154; Ohms v. Church of the Nazarene, 64 Idaho 262, 130 P. 2d 679; National Life Ins. Co. v. Watson, 141 Kan. 903, 44 P. 269; Fourth National Bank v. First Presbyterian Church, 134 Kan. 643, 7 P. 2d 81. We think the partition deeds had only the effect of dividing the property and otherwise conferred on the elder Hamilton no right or title he did not theretofore possess or enjoy.

We are therefore of the opinion that the respondent was not barred or estopped by the partition agreement with his father and by the warranty deeds passing one to the other from asserting the contract made for his benefit by and between his father and mother, nor conveyed away any right, title or interest other than that expressly designated.

Petitioner does not contend that the contract alleged to have been made between W. B. Hamilton and his first wife for the benefit of Norman would be illegal, invalid or unforceable, but does urge strenuously that there is no evidence in the record to support the finding of the jury that such a contract was in fact made. This point is likewise overruled.

We think there is testimony competent to raise an issue of fact. Much is detailed in the Court of Civil Appeals opinion. In evidence is the will executed by W. B. Hamilton on February 3, 1938 and testimony to the effect that on or about the same time Mrs. Mary Lou Hamilton executed a holographic will leaving her property to the respondent. There is evidence of domestic difficulty, the threat of divorce, the express desire on the part of W. B. Hamilton to avoid divorce and property division. There is the testimony of the brother of the first Mrs. Hamilton recounting a conversation in which W. B. Hamilton told him that he did not want his wife to get a divorce; that he desired to keep their community property together for the purpose of handing it down to their son; that he and she had both made wills in which everything would be left to the son; that he and his wife had

agreed to that effect; that these wills would never be changed and that everything would be left to their son; that she would not sue him for a divorce and compel a division of their property. "He told me in front of my sister that he had prepared a will leaving all of his estate to his son, Norman, and she, my sister, said she had made a will leaving all of her estate to her son, Norman, and they had agreed previously to that."

There were other witnesses, one a maid employed by Mrs. Hamilton for four or five years immediately preceding her death, the wife of the respondent, and another, a long-time friend of the family, the testimony of all tending to support the finding of the jury that a contract was made. There is also the circumstance that after W. B. Hamilton's remarriage he kept his property separated so that the property accumulated after remarriage was not commingled with the property owned prior thereto.

Petitioner complains that no consideration whatever was shown moving to W. B. Hamilton and therefore the contract is unenforceable. Consideration in this case does not necessarily mean any benefit to the promisor. "* * * it is sufficient if the promisee has parted with some legal right or has sustained a legal injury, as an inducement for the promise which is sought to be enforced." See 10 Texas Jur., Contracts, Par. 71 and cases cited therein.

The testimony that W. B. Hamilton promised to execute the will in order that his wife would not sue for a divorce and a division of the property undoubtedly revealed a valuable consideration for the contract.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered March 9, 1955.

MR. JUSTICE GRIFFIN, joined by JUSTICES CALVERT and WILSON, dissenting.

I cannot agree with the majority opinion in its holding that Norman Hamilton, by signing the partition contract and warranty deed, putting into effect the terms of the contract, did not transfer, relinquish, or release to W. B. Hamilton the claim to a constructive trust now urged by Norman and sustained by the Court of Civil Appeals.

The respondent in his reply to the petitioner's application for writ of error and filed in this Court, states the nature of the suit as follows:

"This is a suit brought by Norman Hamilton as Plaintiff against Cleo Mason Hamilton as Defendant, individually and as independent executrix of the purported will of William B. Hamilton filed by her for probate. The suit was based upon a contract alleged to have been made by the said William B. Hamilton and his first wife, Mary Lou Mitchell Hamilton, by which they each agreed to will and bequeath to their son, Norman Hamilton, their respective estates and property as existing at the time of their respective deaths. It was alleged that they both made such wills in accordance with their agreement and that Mary Lou Mitchell Hamilton died leaving such a will in effect. As third party beneficiary of the said contract Norman Hamilton sought to have the Court declare that the contract was valid and binding and that he was entitled to the property of the said William B. Hamilton, deceased, thereunder and that a constructive trust be declared to exist in his favor upon any of the property which was in or should come into the possession of Cleo Mason Hamilton, individually or as independent executrix."

Respondent does not base his suit upon any right to inherit from his father, W. B. Hamilton. Indeed, he could not make such assertion ( presuming the validity of his father's last will), for it requires no citation of authority to sustain the proposition that W. B. Hamilton effectively cut off Norman's inheritance rights in property for which recovery is sought herein, by his execution of his will.

What was the character of Norman's rights under the alleged contract between his father and mother to make mutual wills? Norman claims his right was only to take such of W. B. Hamilton's property as W. B. Hamilton had not conveyed to others at the time of W. B. Hamilton's death. Norman states in his brief that W. B. Hamilton could sell, mortgage or otherwise dispose of his property during W.B.'s lifetime, but that he could not transfer and convey such property by his will contrary to the contract and agreement made between W.B. and Mary Lou Mitchell Hamilton on February 3, 1938. I agree this would be a correct statement of Norman's rights arising under a contract such as this one, but I believe that Norman parted with his rights under such contract when he signed the partition contract and deed.

Prior to the death of Mary Lou Hamilton, the mother of Norman, either party, by giving notice to the other, could have withdrawn from said contract and no one could have complained. 169 A.L.R. 39, Sec. 11, *Recision of contract; Id.* 50, Sec. 4, *Revocation of will during joint lives; element of notice,* and authorities cited. Larrabee v. Porter, 1914, Texas Civ. App., 166 S.W. 395, 400, refused. Upon the death of Mary Lou Hamilton, without having revoked the will she executed in pursuance of the contract with W. B. Hamilton, and without having filed a suit for divorce, and upon the establishment of her will by probate thereof, the contract between Mary Lou and W. B. Hamilton became irrevocable, and Norman came into possession of the right in equity to have the contract enforced as to W. B. Hamilton. Murphy v. Slaton, 154 Texas 35, 273 S.W. 2d 588 (1), and authorities cited therein.

"The breach of a contract for the joint execution of a will, or the execution of separate wills, containing reciprocal bequests, gives rise to the same remedies in favor of the injured party as are employed in other cases of breach of contract to make a will, namely an action at law for damages and a suit in equity, but it is to be observed that the latter is the type of relief usually invoked. In fact, according to some authority, only a court of equity can take cognizance of an allegation that the revocation of a joint and mutual will by the surviving testator was in violation of his contract with the deceased testator." 169 A.L.R. 53, d. 1 (a). See also authorities cited in notes.

In Wagnon v. Wagnon, 1929, Texas Civ. App., 16 S.W. 2d 366, refused, the question involved whether or not the separate wills of R. M. Wagnon and his first wife were mutual or joint wills. The wills contained identical provisions whereby each left to the other a life estate with remainder over to their children. The Court of Civil Appeals reversed the trial court's judgment and remanded the cause in order to further develop the evidence regarding the character of the two wills. The Court further held that if the wills were mutual, when R. M. Wagnon probated his wife's will and accepted the benefits, the contract became irrevocable, and the rights of the children in the sum total of the comunity property then in existence became fixed and indefeasible, subject to R. M. Wagnon's rights " 'to use, possess and control as his own individual property'," but not to sell as these wills gave the survivor no power to sell. It was further held that even as to his one-half interest in the community property, R. M. Wagnon would be vested with only a life estate. The same reasoning would apply in our case even though the con-

sideration present here was that Mary Lou Hamilton not get a divorce, and that she leave her property to Norman and to no one else. Norman's right to have his father leave his property to him became fixed at his mother's death and the establishment of the will by probate. This date was sometime in 1944, and long prior to the partition agreement and the warranty deed carrying out such agreement dated March 1, 1951.

Respondent, in his briefs, takes the position that he had no rights in the property of W. B. Hamilton until the death of W. B. Hamilton, and at that time his right to take all property owned by W. B. Hamilton came into being. Respondent says that W. B. Hamilton had the full and complete title to his property during his lifetime with the right to sell and dispose of this property thus cutting off any right of Norman to claim the same. There was nothing that happened at the death of W. B. Hamilton to give Norman any claim to the property. The right to claim the property that W. B. Hamilton possessed at the time of his death arose only and solely by virtue of the contract to make mutual wills entered into on February 3, 1938 by and between Norman's father and mother. That contract had for its consideration and forebearance of Mrs. Mary Lou Hamilton from procuring a divorce, plus the mutual agreement to leave their respective estates to their son, Norman Hamilton. When Mrs. Mary Lou Hamilton died, having carried out her part of the contract, it then became irrevocable and binding on W. B. Hamilton. Norman's pleadings and argument in his briefs show the only right he claims is based upon such contract. The rights under this contract became fixed long prior to W. B. Hamilton's death. Unless Norman can recover under such contract, he cannot recover at all.

What was the nature of that right? It sems to me that his rights under this contract are analogous to the rights of the demaindermen in the case of McMurray v. Stanley, 69 Texas 227, 6 S.W. 412. In that case the court was asked to construe the will of Mrs. F. A. Bagley. The two paragraphs in the will, construction of which was sought, read as follows:

" 'Third. It is my will and desire that my beloved husband shall have all my property, both real, personal, and mixed, whatever the interest may be, whether separate or community interest; and that he shall have full power and control over same, to use and dispose of as he may desire. Fourth. It is my will and desire that at his death, should he have any of said property still remaining in his possession not disposed of or

used by him, that the same shall be given by him to my nieces, Jessie McMurray and Flora Brown, daughters of Vina and Taylor Brown'."

Plaintiffs were Mrs. Bagley's nieces who were named in the will, and the defendants were claimants under the last will of N. G. Bagley, deceased, who was Mrs. Bagley's husband. Defendants' demurrer was sustained, and plaintiffs having declined to amend, their suit was dismissed. The Supreme Court, in an opinion by Judge Stayton, reversed and remanded the cause for trial. Among other things the Court held: "We are of the opinion that N. G. Bagley took under the will an estate in fee in the entire property, but that this was in trust for the beneficiaries named in the fourth paragraph of the will, except as their right was limited by the right given to him to use and dispose of the property during his life-time which was given by the express terms of the will." The Court also held: " We know of no inflexible rule of law forbidding Mrs. Bagley to so dispose of her property by will as to vest the entire legal estate in her husband, with power to him to use or dispose of any or all of it during his life-time, even for his own benefit, and at the same time to vest an equitable estate in what might remain at his death in her nieces, and to confer upon her husband the power, and to make it his duty by will or otherwise, to vest the legal estate in such remaining property at his death in them. The following are cases in which the first taker was given the right to use and absolutely dispose of the property in which *a legal or equitable estate was given* in so much as might remain at the death of the first taker, to another person." (Citing authorities). (Emphasis added)

Judge Stayton then proceeds to state that had the will of Mrs. Bagley expressly provided that the part of the estate remaining at the time of her husband's death should go to the persons named, then a legal estate would have vested in them. However, he says since Mrs. Bagley did declare that her husband, at his death, should give any of the property remaining in his possession to her nieces, it must be held that the will created a trust in favor of these nieces and that it conferred a power on N. G. Bagley, under which he ought to have done some act which would have vested in them the legal estate in fee to so much of the property as remained in his possession at the time of his death. The court goes on to state that since N. G. Bagley failed to vest the property remaining at time of his death in his wife's nieces, they can come into a court of equity

and have the trust enforced. Caples v. Ward, 107 Texas 341, 179 S.W. 856.

It sems to me the above language and reasoning fits our case perfectly. There can be no question but that the effect of the contract between Mrs. Mary Lou Mitchell Hamilton and W. B. Hamilton is exactly what the court in McMurray v. Stanley held was the legal effect of Mrs. Bagley's will. The court held the trust arose at death of Mrs. Bagley. It held that the nieces were vested with an equitable title, and that the trust property could be definitely ascertained by looking to what property N. G. Bagley possessed at the time of his death. This holding establishes that Norman from the time of his mother's death had an equitable title in the land which might be owned by W. B. Hamilton at the time of his death. Norman could convey this equitable title. Surely this was some "claims, rights, and demands" which Normàn Hamilton had on his father, W. B. Hamilton, and on the Dallas County land at the time of the partition contract, and the waranty deed which Norman gave his father to the Dallas County tract of land.

At the death of Mrs. Mary Lou Hamilton, W. B. Hamilton's ownership of his interest in their community property changed so as to become an ownership such as the cases declare to be a conditional fee, or, as it is sometimes called, a defeasible fee, the condition of defeasance being that in the event W. B. Hamilton should dies seized and possessed of any of the property, then such property should pass to and vest in Norman Hamilton. Such was the nature of the contract pleaded and proved by respondent, and upon which he secures favorable jury findings. McMurray v. Stanley, supra; Federal Land Bank of Houston v. Little, 130 Texas 173, 107 S.W. 2d 374; Darragh v. Barmore, Com. App., 242 S.W. 714; West v. Glisson, 1916, Texas Civ. App., 184 S.W. 1042, refused.

The following language from Harrell v. Hickman, 147 Texas 396, 215 S.W. 2d 876, is particularly apropos to our cause.

"No provision in the will or contract places any limitation whatever upon the right of T. M. Harrell during his lifetime to dispose of the estate in any manner he might see fit. The will evidences that each of the testators reserved in himself or herself, should he or she become the survivor, the absolute right to dispose of the estate as such survivor might desire, with the single exception that the survivor could not make a disposition thereof by will contrary to that made in their joint will. It was

clearly the intention of the testators that only the property remaining on hand at the death of the survivor should vest in the named beneficiaries or remaindermen, including respondent. That such beneficiaries should have no rights to or interest in any of the estate, except such portion thereof as remained undisposed of by the survivor at the time of his death, is made free of doubt by the provision in the fourth paragraph that only after the death of both testators, and not before, the remainder of the property of which the survivor should die seized and possessed shall pass to them."

If we substitute the name "W. B. Hamilton" for the name "T. M. Harrell" and use the name "Norman Hamilton" wherever the words "beneficiaries or remaindermen" occur, we will have our case at bar. Many other cases could be cited declaring the same legal principles as those above. The reasoning in all of the above cases determines the nature and extent of the estate which Norman Hamilton took in W. B. Hamilton's property upon the death of Mary Lou Hamilton.

At the time of the execution of the partition agreement in 1951, there is no allegation of any overreaching misrepresentation, or concealment or any inequitable conduct on the part of W. B. Hamilton as to any fact connected with the partition. In fact, the record rather shows that there had developed an estrangement between Norman Hamilton and his father. There was a dealing at arm's length between the parties. Both were good lawyers of long experience, and well versed in the law. The circumstances surrounding the partition demonstrate conclusively that each wanted to have his affairs completely distinct and separate from any claim or interference of the other. Even though the contract and deed were executed to carry into effect this partition and segregation of their affairs, such instruments are "nevertheless binding contracts and are subject to the usual rules of construction to determine their scope and application." Garza v. De Montalvo, 147 Texas 525, 217 S.W. 2d 988, and authorities therein cited.

Keeping in mind the nature and extent of Norman Hamilton's interest or claim on W. B. Hamilton's estate at the time of the partition agreement and deed, let us examine these two instruments to determine the intention of the parties at the time of their execution.

"(3) That William B. Hamilton is to have and take all of the lands aggregating approximately 746 acres situated in Dallas

County, Texas, together with all improvements thereon, *free and clear of all claims, rights and demands upon the part of the said Norman Hamilton."* (Emphasis added.)

Paragraph "(4)" sets out the property which Norman Hamilton is to "have and take * * * free and clear of all claims, rights and demands * * * of said William B. Hamilton." Paragraph "(5" provided that the respective parties "shall make, execute and deliver" unto the opposite party (naming him) good and sufficient warranty deed conveying to such opposite party all of the interest of the party grantor. The contract and the deed were dated March 1, 1951, and the acknowledgments were taken on March 2, 1951. The instruments being part of the same transaction and executed simultaneously are to be considered and construed together.

The language of the contract is clear and unambiguous and can have but one meaning and that meaning is that each of the parties was conveying and relinquishing to the other the lands described "free and clear of all claims, rights, and demands" by the opposite party. The evidence leaves no doubt that at the time these instruments were executed Norman Hamilton knew of the contract and agreement between his parents to make mutual wills and of the considerations for said contract; that he knew his mother had died some seven years previously leaving a will which had been duly probated and devising to him her interest in the community property of herself and W. B. Hamilton; that he knew of his claimed "rights, titles and demands" upon the property his father might own at the time of W. B. Hamilton's death; that the instruments which he executed were made for the express purpose of setting aside to each— himself and his father—certain property which they had theretofore jointly owned so that each would hold said property in his own right "free and clear of all claims, rights and demands" upon the part of the other. How can it be claimed that Norman could sign these instruments to accomplish such purpose, and at the same time reserve unto himself the right to take and have any interest in the Dallas County property upon his father's death save the right of inheritance, which right was effectively cut off by his father's will leaving the Dallas County property to Cleo Mason Hamilton? I cannot agree, under the facts and circumstances of this case and the principles of law applicable thereto, that Norman Hamilton reserved in his contract and deed any such "right, claim or demand." He made no reservation in the instrument signed by him, and I cannot agree that the courts can or should make such reservation for him.

Respondent, in addition to the contentions we have discussed above, seeks to avoid the effect of the plain language of his contract and deed—which language was at least satisfactory to him in 1951—by the fact that such instruments were part of a partition agreement between himself and his father.

It is true that partition deeds are put in a special class by the decisions of our courts, and are immune from some of the strict requirements of real estate conveyances, but as it is well stated in Garza v. De Montalvo, supra, "We know of no rule of construction which would permit the unambiguous meaning of the language of the agreement to be departed from because later developments prove the agreement to be more advantageous to some of the parties than to others."

This Court has defined a partition as "the act or proceeding through which two or more co-owners cause the things to be partitioned to be divided into as many shares as there are owners, and which vests in each of such persons a specific part, with the right to possess it freed from a like right in other persons who, before partition, had an equal right to possess." Hudgins v. Sansom, 72 Texas 229, 10 S.W. 104. We have held that although a partition between joint owners does not confer title upon either, it does locate the right of title of each owner in his own respective tract awarded to him, and it extinguishes the rights of all of the other joint owners in the tract awarded to the particular joint owner. Chace v. Gregg, 88 Texas 552, 32 S.W. 520.

Respondent places much stress upon the claim that the voluntary partition could have no greater right than a forced partition by court proceedings. It is true that either W. B. Hamilton or Norman Hamilton could have gone into court and have forced a partition of their property owned in common by them, but what respondent overlooks is that in such case the court partition would not depend for its effect upon a contract and agreement between the parties—as is the case with our voluntary partition in this cause. The rights of the parties are here determined by the agreement solemnly executed by both parties, and such agreement sets forth the rights of each party after the voluntary partition was had. The parties are bound by their agreement, and not by what a court proceeding without an agreement and under compulsion might have brought forth.

The cases of Clark v. Gauntt, 138 Texas 558, 161 S.W. 2d 270, and McConnell v. Corgey, 153 Texas 49, 262 S.W. 2d 944,

are cited by the Court of Civil Appeals as sustaining the position that Norman's right to receive what property his father possessed at his death, was not released and relinquished by the partition agreement and deed. Those cases are not in point in this cause for in each of those cases it was held that the right of inheritance from a person dying intestate did not pass by virtue of the instruments set out in each case. That proposition of law is no longer open to question in this state. In our case Norman has no right of inheritance from his father, as that right was effectively and legally cut off by the will which his father left. In the above cases, the party from whom the right to inherit was sustained had died intestate. In these cases no trust was impressed upon the property, while in our case there was such a trust impressed upon W. B. Hamilton's property, as I have shown above. The respondent makes no claim to a right of inheritance in the present suit, but bases his claim upon the contract between his father and his mother, made for his benefit on February 3, 1938. Of course, if he should be successful in his suit to set aside his father's will, he will take by the laws of descent and distribution. Those features distinguish our case from the two cases next above cited.

Believing that in 1951, when he executed the partition agreement and deed, Norman Hamilton had and possessed rights, claims and demands which were fixed in W. B. Hamilton's property as of the death of Mary Lou Hamilton in 1944; and believing further that Norman released, relinquished and conveyed these rights to W. B. Hamilton by the partition agreement and deed, I would reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Opinion delivered March 9, 1955.

Rehearing overruled July 13, 1955.