## BATES v. LEFFORGE.
### No. 1451—6123.

Commission of Appeals of Texas, Section B.
Oct. 4, 1933.

Monning & Akin, of Amarillo, for plaintiff in error.

Cooper & Lumpkin, of Amarillo, for defendant in error.

RYAN, Judge.

On November 28, 1925, M. W. Bates leased to F. M. Lefforge lots 16 to 20, inclusive, of block 65 in the city of Amarillo, for the full term of five years commencing on February 1, 1926, at the rate of $400 per year, payable in equal monthly installments in advance. The lease contract contained the following provisions:

"V. The lessee shall pay all taxes on all improvements made on said land during the life of this lease, including street and side walk improvements, if any shall be made.

"VI. The lessee herein shall have the right, after the expiration of this lease, and within thirty days thereafter, to remove any and all improvements which may have been put upon said land by him, in the way of buildings."

The evidence discloses that Lefforge, desiring to obtain said lots for a lumber yard, sent his agent, H. C. Holman, to confer with Bates, the owner, who then resided on a farm in New Mexico; as a result of such conference the lease contract in question was prepared by an attorney named Pritchett, acting for both parties, signed in duplicate by Bates, both copies sent to and signed by Lefforge at Amarillo. Lefforge retained one copy and returned the other to Bates.

It was testified by Bates and Pritchett that Bates and Holman agreed that Lefforge, lessee, should pay for such street paving and sidewalks constructed adjacent to the lease, and Pritchett testified that paragraph V of the lease contract was so written to cover that part of the agreement. He testified also that his experience in street paving improvements had been in Missouri, where the costs of such improvements are denominated a tax against the property, and tax bills are issued in payment therefor, and he took it for granted, without investigation, that the same system prevailed in Texas, and it was with that idea in mind that paragraph V was worded as it was. The above testimony was not controverted.

The city of Amarillo afterwards decided to pave and improve the street adjacent to lot No. 20 and, after the necessary statutory proceedings, entered into contract with

the El Paso Bitulithic Company for that purpose. The ordinance levying an assessment, amounting to $1,705.60, against Bates as an abutting property owner, for his proportionate part of the cost, was passed on August 30, 1927; the assessment was made payable in five equal installments, the first due one year after completion and acceptance by the city of said improvements, and one installment each year thereafter, all evidenced by assignable certificates, which provided an interest charge of 8 per cent., payable annually, and contained the usual maturity acceleration clause should default be made in payment of any such installment; it was also provided that a reasonable attorney's fee and all collection costs, if incurred, should be paid by the property owner.

Lefforge denied liability for the street paving and sidewalk improvements and refused to pay therefor.

On September 15, 1927, Bates executed to the El Paso Bitulithic Company a lien to secure said paving claim, payable in monthly installments of $30 each, the first to become due on the first day of the month after completion of the work and its acceptance by the city. This lien, however, was expressly made subject to a prior lien evidenced by deed of trust to Mary Lyons, in the sum of $5,250 with interest at the rate of 10 per cent. per annum.

Bates' explanation why he signed said lien to the paving company (after Lefforge's refusal to admit liability) was: "The way I happened to sign that was that they said they were going to pave it, and they put it up to me that I would have to pay for it in five years; and the city was charging me a little more for the paving than the El Paso people were, and I couldn't meet that in five payments and the El Paso people extended that. And the city was going to pave it whether I signed it up or not, and I signed it up with the El Paso people to get by with the payment on the paving. I was to give the El Paso Bitulithic Company $30.00 a month," also, "When I first learned that an assessment had been levied on this property which I had leased to Mr. Lefforge, I went to Mr. Lefforge to see if he would pay it, and he told me he would not; that it wasn't set out in the contract sufficient for him to do that. Prior to the time I talked to Mr. Lefforge about paying for the paving, I had seen and talked to Mr. Holman pertaining to this assessment, and he told me that I was record owner of the property and I would have to sign a contract, because they were going to pave it anyhow. I was not living on that property at the time. After the assessment was made, I talked to Mr. Lefforge one time about who was to pay for this paving, and he told me that it wasn't set out in the contract for him to pay for it." Bates paid on such obligation to the amount of $562.80. The improvements were accepted by the city on October 25, 1927.

On January 2, 1930, Bates filed suit in the district court of Potter county against Lefforge to recover the said sum of $1,705.60 with interest and costs, and if necessary, because of ambiguity therein, the said lease be reformed so as to embrace the actual agreement made by the parties to the effect that lessee should pay for all abutting street improvements erected during the life of the lease. This suit was still pending and undisposed of, when by contract of sale dated January 10, 1931, Bates, through a real estate agent, sold and agreed to convey to Lefforge the five lots in question; the contract recites: "The purchase price is $10,000.00, payable as follows: $1987.00 cash (of which Purchaser has deposited with the undersigned Agent $500.00 as part payment, receipt of which is hereby acknowledged by said Agent); and the assumption of $5000.00 payable to Mary E. Lyons and due May 1, 1931, bearing interest at 10% per annum; and $1500.00 payable to Otto Eckert and Ben Monning, due May 1, 1931; and about $1370.00 paving lien payable in annual installments to the El Paso Bitulithic Co; and $142.91 taxes for the year 1930 payable at regular tax paying times for same. Statement of all above items to be furnished at date of closing and if more or less, to be added to or taken from above cash payment so as to make $10,000.00, the gross sale price. It being understood however that this deal and the assumption of said paving indebtedness shall in no way affect, prejudice or bias any lawsuit on same now pending between Seller and Purchaser."

Carrying out said contract of sale, on February 12, 1931, M. W. Bates, individually and as survivor of the community estate of himself and his deceased wife, and as guardian of the persons and estates of his four minor children, conveyed the property in question to Lefforge, the recited consideration being $168.06 in cash, "one-half of which belongs to me individually and the other one-half to my said children and wards, and the further consideration of the assumption and agreement to pay off and discharge by the grantee, which he hereby does, of the following described indebtedness against the land herein conveyed, to-wit:" Here follows an itemization of various liens and tax items, consuming the balance of the consideration, including this: "(b) And the further consideration of Fifteen Hundred Sixteen & 90/100 ($1516.90) Dollars being evidenced by the assumption and agreement to pay off and discharge by the grantee of the unpaid balance of the paving obligation against said property hereinafter described, together with all future

interest accruing thereon, said obligation so assumed by the grantee being more fully described in the mechanic's lien contract entered into between M. W. Bates and the El Paso Bitulithic Company on the 15th day of September, A. D. 1927, and of record in Vol. 30, page 600 of the Mechanic's Lien Records of Potter County, Texas, to which reference is herein made."

Thereafter, the case was called for trial, when defendant filed an amended answer in which he pleaded that since the filing of plaintiff's first amended original petition (September 17, 1930), "plaintiff and defendant have entered into a contract, by the terms of which defendant purchased from M. W. Bates, individually and as survivor in community of himself and wife and as guardian of his minor children, all of said property, and as a part of the consideration for such purchase, defendant assumed and contracted to pay for the paving that was made adjacent to said property and which constitutes the basis of this lawsuit and that plaintiff, M. W. Bates, has never paid same or any part thereof, and by the assumption of payment of this defendant, said Bates has been relieved of any liability thereon and will not be caused to pay same or any part thereof, and the assumption of such payment by the defendant constitutes a full and complete satisfaction and accord of said claim or demand of said plaintiff."

Plaintiff, Bates, met such special plea by supplemental petition, and alleged that he had paid for said paving improvements in the following manner, viz.: $562.80 in cash, and the deduction by defendant of the unpaid balance out of the cash consideration which plaintiff would otherwise have received from the sale of said property and which deduction, under the contract of sale, was agreed to in no way affect, prejudice, or bias plaintiff's right to recover same and therefore was not an accord and satisfaction of said claim.

The trial court instructed a verdict for defendant and under date February 23, 1931, entered judgment accordingly, which was affirmed by the Court of Civil Appeals. 42 S.W.(2d) 806.

### Opinion.

■First. The undisputed evidence shows that in the making of the lease contract, the lessee Lefforge through Holman, his agent, agreed to pay for the street improvements, if any were made during the life of the lease, and if the attorney who drew the contract mistook its terms so that the writing did not represent the real agreement of the parties, there was such a mutual mistake as entitled the plaintiff, Bates, to a reformation of the contract expressive of such real agreement. Kelley v.

Ward, 94 Tex. 289, 60 S. W. 311, 313. In said case Judge Williams quotes with approval from Albany City Savings Institution v. Burdick, 87 N. Y. 40, the following: "It is the general rule that where a written instrument fails to conform to the agreement between the parties in consequence of the mutual mistake of the parties, however induced, * * * a court will reform the instrument so as to make it conform to the actual agreement between the parties," and where the testimony is undisputed as to the circumstances the question then becomes a question of law for the court. Turner v. Montgomery (Tex. Com. App.) 293 S. W. 815.

■Second. Under the contract of sale the consideration to be paid was $10,000; certain liens against the property existed of record; the smaller the amount required to extinguish such liens, the more in amount would be paid in cash to Bates, the vendor. If Lefforge had carried out his original lease contract, he would have paid or arranged for payment of the paving claim and lien, which as we have seen was primarily his obligation and not that of Bates, and the amount thereof would, of course, have inured to Bates' benefit by way of a larger cash payment out of the $10,000 purchase price agreed to be paid for the property; what Lefforge assumed was deducted by him from such consideration or purchase price.

Bates was therefore entitled to recover of Lefforge the amount of such lien and for that purpose instituted this suit.

■Third. There was no accord and satisfaction of what Lefforge owed Bates for breach of his obligation under the lease contract which bound the former to pay for the street improvements in question—that question was involved in suit and, by express agreement of the parties contained in the contract of sale, was reserved and excluded from affecting any provisions of the sale. In other words, the parties agreed that the suit should go on, unaffected by the sale and be tried as if no sale took place.

■■ The discharge of claims by way of accord and satisfaction is dependent upon contract, express or implied, and of course there must be an assent or meeting of the minds of the parties. 1 Tex. Jur. 251; 1 R. C. L. 178. If the creditor is to be held to abate his claim, it must be shown that he understood or should have understood that he was doing so when he received the consideration claimed therefor. 1 R. C. L. 183.

Here, it is manifest that Bates did not understand that he was yielding his claim involved in the suit, because he expressly provided otherwise, in the contract of sale.

■■ Fourth. What has been said above also applies to the contention that the lease and sales contract were merged in the deed.

Merger is the absorption or extinguishment of one estate or contract in another and is largely a question of intention, to a great extent depending on the circumstances surrounding each particular case. 40 C. J. 649. Plaintiff's cause of action relates to a breach of an agreement to pay a certain amount for the lease of the premises in question, to recover damages for which breach a suit was then pending. The deed relates to an entirely distinct, different, and separate agreement to pay a certain amount for the property itself. The alleged breach of the lease was one matter, the conveyance of the property was another, neither related to the other.

The admitted intention of the parties was that the provision of the contract with reference to the lawsuit was still to be given effect after the deed was executed. Mr. Lefforge himself testified: "I signed the sales contract and I saw his reservation in it and Mr. Bruner (the agent negotiating the transaction) mentioned it to me. He said 'the old man wants to reserve his rights in the suit' and I said 'all right we will let him.'" Belcher v. Mulhall, 57 Tex. 17; Cox v. Bray, 28 Tex. 259; Thomas v. Hammond, 47 Tex. 54; 13 C. J. 598.

■■ We recognize the rule announced in Sullivan v. Schreiner (Tex. Civ. App.) 222 S. W. 314, that where the statement as to consideration of a deed is of a contractual nature and is intended to embody and contain the whole contract, parol evidence is not admissible to contradict or vary its terms, but as said by Chief Justice Gaines in Johnson v. Elmen, 94 Tex. 168, 59 S. W. 253, 254, 52 L. R. A. 162, 86 Am. St. Rep. 845: "For the reason that the conveyance must be in writing in order to pass the title, it sometimes occurs that the deed is but a part of the contract, and that there are other stipulations on part of one or both of the parties which do not appear upon its face. When such other terms of the contract are not required by law to be in writing, they may be proved by parol evidence, and given their proper legal effect, subject, however, to the rule that the effect of the deed as a conveyance and as to its covenants cannot be varied by such proof. * * * The agreement of the grantee to pay the notes was a part of the contract for the exchange of the lands, but was not a necessary part of either conveyance. * * * It was a part of the original contract which was agreed upon between the parties, and which was finally consummated by their respective conveyances."

So here, the deed is given its effect as a conveyance but the contract of sale protected Bates in his right of recovery in the then pending lawsuit for breach of the lease contract, and was not a necessary part of the conveyance, and was not intended to merge or extinguish the reservation contained in the contract of sale which controls and governs the terms of the deed.

Fifth. From what has been said above, we conclude that Bates is entitled to recover from F. M. Lefforge the amount of the paving lien, viz., $1,705.60 with interest at the rate of 8 per cent. per annum from October 25, 1927 (date of completion and acceptance of said paving improvements by the city), until February 12, 1931 (date of deed to Lefforge), and thereafter at the rate of 6 per cent. per annum, and therefore recommend that the judgments of the district court and Court of Civil Appeals be reversed, and judgment be here rendered as above indicated.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.