**Dolores C. ZAPATERO, et al., Appellants,**

v.

**Amando CANALES, et al., Appellees.**

**No. 04–86–00148–CV.**

Court of Appeals of Texas, San Antonio.

April 15, 1987.

Rehearing Denied May 26, 1987.

Terry Canales, Premont, for appellants.

Homer E. Dean, Jr., Alice, and Jack M. McGinnis, San Antonio, for appellees.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a summary judgment entered against appellant, Dolores C. Zapatero. The trial court denied Zapatero's motion for summary judgment and granted appellee Canales' motion for summary judgment that Zapatero take nothing.[1]

The basic facts of the case are undisputed. Ed Canales (Zapatero's father) and his brother (appellee), Amando Canales, purchased two adjacent tracts of land. One tract, consisting of a little more than 2,400 acres, was purchased August 15, 1947, and is not involved in this dispute. The second tract, consisting of approximately 2,820 acres, was purchased August 19, 1947, and is the property in dispute. Both tracts were known as La Juana Ranch. The Canales brothers took the land in the second tract expressly subject to "[a] one sixty-fourth ($\frac{1}{64}$) royalty interest assigned by J.T. Graham to W.R. Perkins and Jacob S. Floyd under date of October 13, 1933 . . . and to three sixty-fourths ($\frac{3}{64}$) royalty in-

---

1. The trial court denied Canales' supplemental and second supplemental motions for summary judgments.

terest assigned by J.T. Graham, et ux, to R.M. Black, Trustee, under date of October 2, 1933...." The deed with the 1/16 reservation was properly filed of record.

On February 1, 1952, Ed Canales and Amando Canales executed a partition deed of the surface estate of the entire ranch. Ed Canales received the 2,400 acre tract and Amando Canales received the 2,820 acre tract in dispute. Each brother retained an undivided 1/2 interest in the mineral estate of the entire ranch. Zapatero, Ed Canales' daughter, succeeded to her father's interest when he died in 1978.

On April 27, 1982, Zapatero and Amando Canales and his wife, executed a partition agreement of the mineral estate of the ranch. Canales and Zapatero received the executive right to make oil and gas leases on their respective tracts plus all bonuses and delay rentals. Each received a 3/32 nonparticipating royalty interest in the other's tract. The parties did not discuss the existence of the outstanding 1/16 royalty interest in Canales' tract nor is it mentioned in the partition agreement.

Canales executed an oil and gas lease to Gathings Oil Land Division, Inc. Gathings tendered division orders, which provided for an equal division between Zapatero and Canales of the outstanding 1/16 royalty interest: Zapatero was to receive 1/16 royalty payment, Canales a 1/16 royalty payment, and the outstanding non-participating royalty owners (Perkins, Floyd, and Black, Trustee) a 1/16 royalty payment.

Zapatero filed suit seeking to cancel or reform the partition deed on the grounds that both parties were operating under a mutual mistake of fact because Zapatero was unaware of the outstanding 1/16 interest owned by Perkins, et al., and the parties intended that each should receive a full 3/32 interest.

Canales countered that Zapatero should bear the burden of the outstanding 1/16 royalty interest alone under the *Duhig* rule.[2] He contends that Zapatero conveyed 1/2 of her mineral estate to him and should therefore absorb the loss of the 1/16 outstanding interest.

The trial court entered a declaratory summary judgment that Canales and Zapatero share the outstanding 1/16 interest equally: Zapatero takes 1/16, Canales 1/16, and Perkins, Floyd, and Black, Trustee, the remaining 1/16 interest.

Zapatero initiated this appeal and Canales filed a cross-point, each assailing the trial court's allocation of the royalty interests.

Appellant contends the trial court erred in granting summary judgment in favor of appellees because appellant pleaded and proved facts entitling her to a rescission and cancellation of the partition agreement due to a mutual mistake.

■ A mutual mistake is a mistake common to both parties to a contract, each laboring under the same misconception. *Commercial Standard Insurance Co. v. White*, 423 S.W.2d 427, 433 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). The mistake must ordinarily not be due to the negligence of the person seeking the rescission and cancellation. *Id.*

■ The summary judgment evidence clearly establishes that appellees, Amando and Betty Canales, knew of the existence of the outstanding 1/16 royalty. The outstanding 1/16 interest is clearly indicated in appellant's chain of title (the deed to appellant's father, from whom she deraigns title) as well as in the document partitioning the surface state between Amando Canales and appellant's father. Further, the deed and surface partition agreement were recorded in the deed records for Duval County, Texas—the deed since 1947.

Appellant testified she understood that, according to the partition agreement, she was to receive one-half of the oil royalties produced from the appellees' property. Appellees stated they believed the parties were to divide, half and half, whatever royalties the parties owned. The attorney who prepared the partition agreement also stated he intended the parties to divide the royalties evenly.

---

**2.** *Duhig v. Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940).

As a matter of law, we find no mutual mistake existed among the parties concerning the existence of the outstanding royalty nor of the legal effect of the outstanding interest. At most, appellant presented evidence of the existence of a unilateral mistake on her part.

A unilateral mistake by a party to the agreement ordinarily will not constitute grounds for relief when the mistake was not known to or induced by the other party. *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1973).

In order to obtain a judgment of rescission and cancellation based on a unilateral mistake, appellant must show that (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the rescission must not result in prejudice to the other party except for the loss of his bargain. The burden is on the party seeking rescission and cancellation to establish all of these elements. *Fonseca v. County of Hidalgo*, 527 S.W.2d 474, 478–79 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

Amando Canales stated, in his oral deposition, that he knew since 1947 of the outstanding royalty but did not know appellant was unaware of it. He stated he thought everyone knew the outstanding interest existed. Appellant presented no evidence to refute this. She offered no evidence tending to show that appellees were aware of her ignorance or misapprehension of the facts.

Appellant failed to establish that her misapprehension was either known to appellees or induced by them.

Further, the trial court stated, and we find sufficient evidence to support it, that the outstanding interest was fully described in the deed records. A party is charged with knowledge of all limitations to his title found through the deed records. *First Savings & Loan Association of El Paso v. Avila*, 538 S.W.2d 846, 849 (Tex. Civ.App.—El Paso 1976, writ ref'd n.r.e.); TEX.REV.CIV.STAT.ANN. art. 6646 (Vernon 1969). We find no evidence to support appellants' assertion of unilateral mistake.

Zapatero next argues she is entitled to rescission because L.H. Warburton, Jr., the attorney who drafted the agreement, was ignorant of the Perkins/Floyd/Black outstanding 1/16th non-participating royalty. She bases her argument on *Bates v. Lefforge*, 63 S.W.2d 360 (Tex.Comm'n.App. 1933, holding approved). However, that case is inapplicable.

*Bates* stands for the principle that rescission is available when an agreement, which is drafted by an attorney representing both parties, fails to reflect what the parties actually agreed. *Bates*, 63 S.W.2d at 362. In the case at bar, the agreement is clear and unambiguous and reflects the actual agreement of the parties. Hence, there was no mistake.

We hold the trial court did not err in denying appellant's motion for summary judgment for rescission.

Appellant complains the partition agreement is voidable due to a failure of consideration which fact appellant contends is admitted by appellees.

In their motion for summary judgment appellees stated:

There are no issues as to any material facts. For the purposes of this motion, these defendants accept as true all of the factual allegations contained in the Second Amended Petition filed by plaintiffs except the allegation of mutual mistake as to a material fact.

Appellant, citing no authority, states she is entitled to a trial on the issue concerning failure of consideration since appellees admit all facts alleged in her second amended petition.

We are unable to consider this point because appellant failed to request the inclusion of her second amended petition in the record before this Court. It is her burden to present us with an adequate record. In the absence of an adequate record we must presume the trial court had before it all

necessary documents which support its judgment. *Greenville Independent School District v. B & J Excavating, Inc.,* 694 S.W.2d 410, 412 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Gulf Oil Co. v. Williams,* 642 S.W.2d 270, 273 (Tex.App.—Texarkana 1982, no writ). Therefore, we must presume appellant's second amended petition made no allegations of fact concerning a failure of consideration.

Furthermore, no evidence of a failure of consideration was presented in the summary judgment evidence. The partition deed clearly indicates the existence of consideration. Appellant received her benefit, that of obtaining the executory right to enter all oil and gas leases on her portion, receive all delay and bonus payments, and to receive a ³⁄₃₂ royalty interest from appellees' leases. Because her ³⁄₃₂ interest may be burdened with another outstanding interest does not relegate this situation to one involving a failure of consideration.

■ Appellant complains the trial court erred in dividing the outstanding ¹⁄₁₆ interest equally between her and appellees. She argues that because she requested an equitable remedy the trial court is precluded from applying legal rules of construction. She argues that the Supreme Court case of *Continental Oil Co. v. Doornbos,* 402 S.W.2d 879 (1966) supports her position.

In *Doornbos,* the Supreme Court held that once the trial court applied equitable principles and caused a deed to be reformed, it could not, in that same judgment, use legal principles of construction to construe that deed, which in effect would cause a second reformation of the deed. The trial court may apply all equitable rules or all legal rules concerning the deed, but may not mix the two. In our case, no mutual mistake was established and no equitable relief was granted.

Appellant contends the trial court exceeded its power by entering a declaratory judgment construing the partition agreement in the absence of a request for such relief. Appellant claims appellees' only request was that appellant take nothing and that appellees recover their costs.

Appellees requested, in their second supplemental motion for summary judgment and reply to Zapatero's motion for summary judgment, that a decision be made as to whether appellant bears the full burden of the outstanding ¹⁄₁₆ interest or whether the parties must divide that burden equally. Thus, the trial court's declaratory powers were called into action to construe a written agreement. *See Blanton v. Bruce,* 688 S.W.2d 908 (Tex.App.—Eastland 1985, writ ref'd n.r.e.). The trial court interpreted the language according to legal rules of construction.

Appellee cross-appeals the judgment complaining the trial court erred in failing to apply the *Duhig* rule to find that appellant should bear the entire burden of the outstanding ¹⁄₁₆ royalty interest. *Duhig v. Peavy-Moore Lumber Co.,* 135 Tex. 503, 144 S.W.2d 878 (1940).

■ The *Duhig* rule is based on an estoppel theory that one who purports to convey a mineral interest through warranty deed and, at the same time, reserves a mineral interest is estopped from asserting any title to the reserved minerals until the grantee is made whole. *Duhig,* 144 S.W.2d at 880. Clearly, in order for *Duhig* to apply, there must be a conveyance of a mineral interest. However, in the case before us, no conveyance was made. The parties executed a partition agreement. It has long been the law in Texas:

> that a partition deed does not operate as a conveyance or transfer of title, the effect being to divide the property and to give to each the share which he already owned by virtue of some prior deed or other conveyance, [citations omitted], the reason being that the parties already owned their respective interests and a partition deed from one to another is not the conveyance of title but merely the division of the property so that each may have exclusive use and occupancy and the right to dispose of as he sees fit his own land, to make it in a form certain instead of an undivided interest in the whole.

*Hamilton v. Hamilton,* 154 Tex. 511, 280 S.W.2d 588, 593 (1955). The partition merely dissolves the tenancy in common between the parties. *Chace v. Gregg,* 88 Tex. 552, 32 S.W. 520, 522 (1895). Thus, in a partition deed no conveyance occurs and, therefore, the *Duhig* rule does not apply to partition agreements.

We find no reversible error committed by the trial court in rendering summary judgment for appellees and construing the partition agreement. The judgment is affirmed.

CADENA, Chief Justice, concurring.

While I agree with the result, I am not comfortable with the language found in *Hamilton v. Hamilton,* 154 Tex. 511, 280 S.W.2d 588, 593 (1955), which is quoted in the Court's opinion. *Hamilton* concludes that a partition deed does not operate as a conveyance or transfer of title because the only effect of a partition deed is:

> "to divide the property and give to each the share which he already owned by virtue of some prior deed or other conveyance. [citations omitted] ... the reason being that the parties already owned their respective interests and a partition deed from one to another is not the conveyance of title but merely the division of the property so that each may have the exclusive use and occupancy and the right to dispose of as he sees fit his own land, to make it in a form certain instead of an undivided interest in the whole."

Such an argument can be seriously made only if we close our eyes in a deliberate effort not to see what has actually happened.

The true effect of a partition is readily apparent if we take the partition between Ed and Amando Canales as an example. The 'prior' deeds in this case were the instruments executed in August 1947, conveying the two tracts in question to Ed and his brother Amando. As a result of these conveyances, Ed owned an undivided one-half interest in the 2,820–acre tract, while Amando owned similar undivided interests in each tract. Prior to the 1952 partition, each could have conveyed an undivided one-

half interest in either tract, both tracts, or a portion or portions of either of both tracts, but neither could have conveyed the full fee simple interest in either tract or in any portion of either tract. This is true simply because each owned only an undivided one-half interest. After the 1952 partition, Ed could have conveyed the full fee simple interest in the 2,400–acre tract, but was powerless to convey any interest in the 2,820–acre tract, but could convey no interest in the 2,400–acre tract. Stated differently, as a result of the partition, Ed had received Amando's one-half interest in the 2,400–acre tract, making him the owner of the full interest in that tract, while Amando had received Ed's one-half interest in the 2,820–acre tract, making Amando the owner of the full interest in that tract. These post-partition interests differed radically from the "share which [Amando and Ed] already owned by virtue of" the prior 1947 deeds. As a result of the partition, Amando's interest in the 2,400–acre tract was transferred to Ed, while Ed's interest in the 2,820–acre tract was transferred to Amando. However much we may hate to recognize the true situation, the blunt fact is that a transfer of an interest in land is a conveyance.

The fact that a partition of land involves the alienation of a present interest in land was recognized in 1887 in *Warlow v. Miller,* 69 Tex. 395, 6 S.W. 292, 294 (1887). There the court pointed out: "to partition the land so as to give to each [cotenant] an exclusive ownership of a designated portion in severalty is for each to surrender his interest in the portion allotted to the others." This is followed by the statement that this release of an interest "is considered by our courts not to be a conveyance of lands within the meaning of the statute of frauds." However, this last observation cannot be interpreted as a holding that a partition is not a conveyance. The court is merely holding that the type of conveyance evidenced by a partition is not the type of conveyance contemplated by the statute of frauds. This is made clear by the statement, that "... there is nothing in our statute of frauds that prohibits a

[parol] conveyance ... of an interest in real estate." *Id.*

Despite the obvious defects in the reasoning which leads to the conclusion that a partition is not a "conveyance," we are of course bound by the holdings of the Supreme Court in *Hamilton* and other cases decided since the 1887 decision in *Warlow v. Miller.*

CANTU, J., joins in this concurring opinion.