COURT OF APPEALS

                                                 SECOND DISTRICT
OF TEXAS

                                                                FORT
WORTH

 

                                                NO.  2-08-170-CV

 

 

JAMES POAG                                                                           APPELLANT
AND

                                                                                                          APPELLEE

 

V.

 

KATHY MCCORMICK FLORIES                                                  APPELLEE AND

                                                                                                        APPELLANT

 

                                                       ------------

 

              FROM
THE 342ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I. 
Introduction

Appellant
James Poag appeals the trial court=s
final judgment granting summary judgment in favor of Appellee Kathy McCormick
Flories and dismissing his claims with prejudice.  Flories cross-appeals, arguing that the trial
court abused its discretion by failing to award attorneys=
fees to her.  We affirm.








II. 
Factual and Procedural History

In
February 1984, Flories=s husband B.R. deeded 214.9
acres of land to Ranchoaks Joint Venture by general warranty deed.  That land subsequently became Ranchoaks
Addition, a development of individual residential lots that were marketed under
a common scheme for mobile homes.  As of
January 1987, B.R. owned all of Ranchoaks Addition=s
mineral estate. 

In
May 1987, B.R. and several of his business associates, in an unrelated matter,
signed a promissory note payable to the Texas American Bank/Fort Worth, N.A., a
portion of which B.R. was personally liable. 
The note was subsequently assigned to Mike Ferguson, trustee and
president of Anson Financial (Anson). 

In
June and October 1987, B.R. conveyed three lots in the Ranchoaks Addition to
Poag by general warranty deed.  All three
deeds provided that they conveyed the Asurface
estate only.@ 

In
November 1991, B.R. died, and his will was admitted for probate. Pursuant to
his will, the probate court appointed Flories as dependent administratrix and
authorized her to operate B.R.=s
business.








After
B.R.=s
death, Ferguson filed suit on behalf of Anson against B.R.=s
estate and eventually obtained a judgment against the estate.  Anson=s claim
was subsequently settled, and as consideration for the settlement, Anson agreed
to purchase from B.R.=s estate several parcels of
land in the Ranchoaks Addition.  The
terms of the settlement agreement were set forth in a document, which did not
contain the phrase Asurface estate only.@

After
Anson=s
claim against B.R.=s estate was settled,
Flories filed an application for sale of real property and real assets with the
probate court to fulfill the terms of the settlement agreement.  The probate court granted the application and
ordered that the agreed upon parcels be sold at a private sale for cash.  Neither the application nor the probate court=s
order included the phrase Asurface
estate only.@  The property sold, and on May 15, 1996,
Flories filed a report of sale of real property with the probate court, which
described the property sold as Asurface
estate only.@  The probate court approved and confirmed the
sale of the Asurface
estate only@
property and entered a written decree confirming the sale, which was later
attached to and made a part of the administrator=s
deed.  The administrator=s
deed, dated June 10, 1996, conveyed the Asurface
estate only@ in
four parcels of land to Anson and was recorded in the Tarrant County deed
records on June 11, 1996.

On
June 21, 1996, Anson conveyed two of the four parcels of land to Poag by AWarranty
Deed with Vendor=s Lien.@  The deed provided that the conveyance was
subject to Aany
and all . . . reservations . . . affecting the herein described property.@  To secure part of the $110,000 purchase
price, Poag signed and delivered a deed of trust to Anson in which Poag
expressly provided that Aall presently recorded . . .
reservations[,] . . . oil and gas leases, [and] mineral severance[s]@
were exceptions to the conveyance and warranty.








In
August 1996, the probate court signed an order approving the first amended
account for final settlement and declaring that all property remaining on hand
after payment of the various settlements be delivered to Flories, Athe
person entitled to receive such property.@  Subsequently, the probate court closed B.R.=s
estate and discharged Flories as administratrix.

In
June 2005, Flories executed a mineral lease agreement, granting Antero
Resources, LLP the right to develop the mineral estate on the two tracts of
land conveyed to Poag by Anson in June 1996. 

In
January 2006, Poag filed suit against Flories, petitioning the court Apursuant
to the Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies
Code, for a declaration of the invalidity of a certain document and/or claim
made by . . . Flories, in order to acquire title to property in which [Poag]
has an interest . . . .@  Specifically, Poag prayed for a declaration
that Athe
oil and gas lease executed by [Flories] is invalid and unenforceable, ordering
it removed from the title of the properties made the subject of this
litigation, and quieting title in [Poag].@  Poag further alleged slander of title and
reformation claims in his petition. 
Flories=s
answer (1) generally denied Poag=s
claims and allegations, (2) asserted various affirmative defenses, and (3)
requested an award of attorneys=
fees under chapters 37 and 38 of the Texas Civil Practice and Remedies Code.








Flories
filed a motion for summary judgment, arguing that there was no evidence to
support Poag=s
declaratory judgment action or his slander of title and reformation
claims.  Specifically, Flories asserted
that the slander of title claim failed because there was no evidence that:  1) Poag possessed the mineral estate he
alleges was slandered, 2) Flories published a disparaging statement about title
to the property, 3) Flories published any statement with legal malice, or 4)
Flories lost a specific sale of the claimed estate, entitling Poag to special
damages.  Flories further asserted that
Poag=s
reformation claim failed because there was no evidence of any preexisting oral
or written agreement between her and PoagCtherefore,
no privity.  In the alternative, Flories
argued that Poag=s claims were barred by the
applicable statutes of limitations or that the evidence negated at least one
essential element of each of Poag=s
reformation and slander of title claims. 

Poag
filed a response and a first amended original petition, adding an additional
claim for suit to quiet title.  Flories
thereafter filed a supplemental motion for summary judgment, claiming that
there was no evidence that the administrator=s
deed was invalid or unenforceable, which is the third essential element of Poag=s
suit to quiet title claim. 
Alternatively, Flories argued that Poag=s
claim was barred by the applicable statute of limitations or that the evidence
negated at least one essential element of Poag=s
suit to quiet title claim. 








In
November 2007, at an evidentiary hearing on the issue of attorneys=
fees, the trial court found that Flories had reasonable and necessary attorneys=
fees in the amount of $115,084.07.  The
trial court also took judicial notice of Flories=s
appellate attorneys= fees in the amount of
$30,000 in the event of an appeal to this court, $10,000 in the event of a
petition for review to the Texas Supreme Court, and $25,000 in the event the
Texas Supreme Court granted review.  The
trial court found, however, that Flories=s
pleadings did not support an award of attorneys=
fees, but A[h]ad
there been a counterclaim for declaratory judgment or if it [had been]
appropriate to award attorney[s=]
fees,@
then the court would have awarded them. 
Subsequently, the trial court entered a final judgment granting Flories=s
motions for summary judgment, dismissing all of Poag=s
claims with prejudice, and denying Flories her attorneys=
fees.  The trial court did not specify
the grounds upon which it granted Flories=s
motions.       Poag filed a motion for new
trial and a request for leave to file discovery evidence.  The day before the hearing on Poag=s
motion for new trial, Poag filed an amended motion for new trial and a request
for leave to reopen and file additional evidence.  Flories subsequently filed an objection to
Poag=s
amended motion and a written response. 
After a hearing, the trial court denied Poag=s
amended motion.  Poag thereafter appealed
the trial court=s final judgment as it
related to the summary judgment in favor of Flories, and Flories cross-appealed
based on the trial court=s denial of her attorneys=
fees.








In
August 2008, Poag filed a notice of bankruptcy, notifying this court that he
had filed for bankruptcy in federal court. 
This court subsequently stayed the appeal pursuant to appellate
procedure rule 8.2.  See Tex. R.
App. P. 8.2.  In February 2009, the
bankruptcy court granted Flories relief from the bankruptcy stay, allowing her
to pursue her appeal relating to attorneys=
fees.  Thereafter, both Flories and Poag
filed motions to reinstate their appeals, which this court reinstated on June
11, 2009.

III. 
Poag=s Appeal

In
two issues, Poag asserts that the trial court erred by granting Flories=s
motion and supplemental motion for summary judgment because (1) his claimsCsuit
to quiet title, slander of title, and reformationCare
not barred by the applicable statutes of limitations and (2) there is
summary judgment evidence raising a genuine issue of material fact as to each
element of his claims.  In his final
issue, Poag argues that the trial court erred by denying his AFirst
Amended Motion for New Trial and Request for Leave to Reopen and File
Additional Evidence@ because the additional
evidence was decisive, would not have caused undue delay, and was necessary to
prevent an injustice.  We first address
whether the trial court erred by granting Flories=s
motions for summary judgment.

A.  Summary Judgment

Although
when both no-evidence and traditional summary judgment motions are filed we
usually address the no-evidence motion first, see Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 600 (Tex. 2004), here we will review the propriety of granting
the traditional summary judgment first because it is dispositive.  See Tex. R. App. P. 47.1; Reynolds
v. Murphy, 188 S.W.3d 252, 258 (Tex. App.CFort
Worth 2006, pet. denied) (op. on reh=g), cert.
denied, 549 U.S. 1281 (2007).

1.  Standard of Review








We
review a summary judgment de novo.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  A movant is entitled to
summary judgment on an affirmative defense if the movant conclusively proves
all the elements of the affirmative defense. 
Chau v. Riddle, 254 S.W.3d 453, 455 (Tex. 2008); see Tex.
R. Civ. P. 166a(b), (c).  Thus, to be
entitled to summary judgment based on the defense of limitations, the movant
must conclusively establish the date the cause of action accrued, negate the
applicability of the discovery rule if applicable in the case, and prove as a
matter of law that the non-movant=s
claim is time‑barred.  See KPMG
Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex.
1999); Lerner v. First Commerce Bank, 302 S.W.3d 16, 18 (Tex. App.CHouston
[14th Dist.] 2009, no pet.).

2.  Applicable Statutes of Limitations

a.  Suit to Quiet Title

An
equitable suit to quiet title is not subject to limitations if a deed is
void.  Ford v. Exxon Mobil Chem. Co.,
235 S.W.3d 615, 618 (Tex. 2007).  If a
deed is voidable, however, then the four‑year statute of limitations
controls.  See id. (noting that
when a deed is merely voidable, equity will not intervene because claimant has
an adequate remedy at law); see also Slaughter v. Qualls, 139 Tex. 340,
345, 162 S.W.2d 671, 674 (1942) (stating that four-year statute of limitations
applies to deeds that are voidable).








The
question of whether a deed is void or voidable depends on its effect upon the
title at the time it was executed and delivered.  Slaughter, 162 S.W.2d at 674.  A void deed is without vitality or legal
effect.  Id. at 676.  A voidable deed on the other hand Aoperates
to accomplish the thing sought to be accomplished, until the fatal vice in the
transaction has been judicially ascertained and declared.@  Id.

Here,
Poag alleged that the language in the administrator=s
deed, Asurface
estate only,@ was
Anot
the intent of the document@ and
Awas
a fraud on the creditors of the Estate.@  He further alleged that the failure of the
administrator=s
deed to evidence the true intent of the parties was due to a mutual mistake or
a Aunilateral
mistake by one party together with the fraud or other inequitable conduct by
[Flories].@  Because deeds obtained by fraud or mutual
mistake are voidable rather than void, and because unilateral mistake does not
apply to the facts of this case, the administrator=s
deed at issue here is voidable. 
Therefore, the four-year statute of limitations applies.  See Nobles v. Marcus, 533 S.W.2d 923,
926 (Tex. 1976) (holding that deeds obtained by fraud are voidable and remain
effective until set aside); see also Williams v. Glash, 789 S.W.2d 261,
264 (Tex. 1990) (stating that when parties to an agreement have contracted
under a mutual misconception of material fact, the agreement is voidable under
the doctrine of mutual mistake); Zapatero v. Canales, 730 S.W.2d 111,
114 (Tex. App.CSan
Antonio 1987, writ ref=d n.r.e.) (declaring that a
party cannot claim unilateral mistake concerning outstanding mineral interest
because interest was fully described in deed records).








b.  Suit for Reformation and Slander of Title

The
four‑year statute of limitations also governs a suit for reformation. See
Brown v. Havard, 593 S.W.2d 939, 947 (Tex. 1980) (applying four-year
statute of limitations to reformation suit). 
The two-year statute of limitations governs a claim for slander of title.  Tex. Civ. Prac. & Rem. Code Ann. ' 16.003
(Vernon Supp. 2009); see Kidd v. Hoggett, 331 S.W.2d 515, 520 (Tex. Civ.
App.CSan
Antonio 1959, writ ref=d n.r.e.) (applying two-year
statute of limitations to claim for slander of title).

3.  Discussion

In
general, a cause of action accrues and limitations begin running when a
wrongful act causes a legal injury.  See S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.
1996).  Here, Poag claims that the
wrongful act occurred in June 1996 when the administrator=s
deed, which conveyed four parcels of land from Flories to Anson, was recorded
in the Tarrant County deed records as a conveyance of Asurface
estate only.@  Thus, Poag=s
slander of title, reformation, and suit to quiet title causes of actions filed
in 2006 are clearly barred by the applicable two- and four-year statutes of
limitations.  Poag, however, argues that
the discovery rule applies to his claims. 
We disagree.








The
discovery rule defers the accrual of a cause of action until the plaintiff knows,
or by exercising reasonable diligence, should know of the facts giving rise to
the claim.  Barker v. Eckman, 213
S.W.3d 306, 311B12 (Tex. 2006).  For the discovery rule to apply, the injury
must be inherently undiscoverable and objectively verifiable.  Id. at 312.  An injury is inherently undiscoverable if it
is the type of injury that is not generally discoverable by the exercise of
reasonable diligence.  HECI
Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).

Here,
the conveyance Poag attacks occurred in 1996 between Flories and Anson.  The conveyancing documentCthe
administrator=s
deedCwas
recorded in the Tarrant County deed records on June 11, 1996, and conveyed the Asurface
estate only@ in
four parcels of land from Flories to Anson. 
On June 21, 1996, Anson conveyed two of those four parcels of land to
Poag.  Poag took the conveyance subject
to Aany
and all . . . reservations . . . affecting the herein described property.@  Poag also signed and delivered a deed of
trust to Anson in which he expressly provided that Aall
presently recorded . . . reservations[,] . . . oil and gas leases, [and]
mineral severance[s]@ were exceptions to the
conveyance and warranty.








The
recording of the administrator=s
deed on June 11, 1996, charged Poag with notice that Anson only possessed the
surface estate, thereby commencing Poag=s
two- and four-year period of limitations to file an action to set the
administrator=s
deed aside.  See Mooney v. Harlin,
622 S.W.2d 83, 85 (Tex. 1981) (stating that a person is charged with
constructive knowledge of the actual knowledge that one could gain by an
examination of the public records); see also Hoerster v. Wilke, 138 Tex
263, 265B67,
158 S.W.2d 288, 289B90 (1942) (holding that suit
to set aside fraudulent conveyance accrues when the fraud is or could be
discovered by the exercise of reasonable diligence). 








Moreover,
although Poag presents some evidence of fraud or mutual mistake in the
conveyance between Flories and Anson, at most this would toll limitations as to
Anson, not as to a third party.  See,
e.g., Simmons v. Simmons, No. 05-00-00460-CV, 2001 WL 301472, at *2 (Tex.
App.CDallas
Mar. 29, 2001, pet. denied) (not designated for publication) (concluding
appellant, as a third party, was not entitled to the tolling of limitations on
his cause of action because evidence did not support tolling for a third
party).[1]
Poag has presented no evidence of any circumstances that would raise a fact
issue concerning the tolling of the statute of limitations as to him (as opposed
to Anson).  Id.  Thus, Poag=s
limitations period on his claims expired in June 1998 and June 2000.  Poag=s
suit filed in 2006 is barred by the applicable statutes of limitations.  Consequently, the trial court did not err by
granting Flories=s motions for summary
judgment on the affirmative defense of limitations.  We therefore overrule Poag=s
first issue.  Having determined that
summary judgment was proper on this ground, we need not reach Poag=s
second issue, complaining that the trial court erred by granting Flories=s
motions for summary judgment on the basis of no evidence.  See Tex. R. App. P. 47.1.

B.  Request for Leave to Reopen

In
Poag=s
third issue, he argues that the trial court erred by denying his request to
reopen the case and file additional evidence. 
The evidence that Poag sought to offer was:  (1) excerpts from his deposition testimony,
(2) an affidavit in which he discusses both the contract he entered into with
Anson and the Title Policy he received on the two tracts of land at issue, and
(3) an actual copy of the Title Policy.








We
review the denial of a motion to reopen the evidence under an abuse of
discretion standard.  Hernandez v.
Lautensack, 201 S.W.3d 771, 779 (Tex. App.CFort
Worth 2006, pet. denied).  Texas Rule of
Civil Procedure 270 provides that a trial court may permit additional evidence
to be offered at any time when it clearly appears necessary to the
administration of justice.  Tex. R. Civ.
P. 270.  Rule 270 allows, but does not
require, a trial court to permit additional evidence.  Lopez v. Lopez, 55 S.W.3d 194, 201
(Tex. App.CCorpus
Christi 2001, no pet.).  In determining
whether to permit additional evidence, a court should consider whether (1) the
moving party showed due diligence in obtaining the evidence; (2) the proffered
evidence is decisive; (3) reception of such evidence will cause undue delay;
and (4) granting the motion will cause injustice.  Hernandez, 201 S.W.3d at 779.  The decision to reopen is within the trial
court=s
sound discretion.  Id.  A[A]
trial court does not abuse its discretion by refusing to reopen a case after
evidence is closed if the party seeking to reopen has not shown diligence in
attempting to produce the evidence in a timely fashion.@  Lopez, 55 S.W.3d at 201 (citing Estrello
v. Elboar, 965 S.W.2d 754, 759 (Tex. App.CFort
Worth 1998, no pet.)); see Hernandez, 201 S.W.3d at 779.

Here,
Poag does not address the question of diligence in his brief.  After an independent review, we can find
nothing in the record showing that Poag was diligent in attempting to produce
the additional evidence in a timely fashion. 
On the contrary, the record shows that Poag=s
deposition testimony was taken more than a year before the trial court entered
its final judgment.  There is also
evidence that Poag provided Flories with a copy of the Title Policy eight
months prior to the entry of final judgment. 
Finally, Poag=s affidavit is not based on
new testimony or newly discovered evidence. 
The trial court could have reasonably concluded, on this record, that
Poag=s
desire to offer additional evidence was related to the trial court=s
ruling in its final judgment.  Under
these circumstances, Athe interests of justice do not
warrant a second bite at the apple.@  Estrello, 965 S.W.2d at 759; see
Hernandez, 201 S.W.3d at 779 (concluding appellant failed to show he was
diligent in attempting to produce evidence when he had opportunity to put on
evidence before trial court closed evidentiary phase of trial).  Therefore, the trial court did not abuse its
discretion by denying Poag=s
request to reopen and file additional evidence. 
Accordingly, we overrule Poag=s
third issue.








IV. 
Flories=s Cross-Appeal

In
her sole issue on cross-appeal, Flories argues that the trial court abused its
discretion by refusing to award her Aher
attorneys=
fees based upon its mistaken belief that Flories=s
pleadings do not support an award of attorneys=
fees even though it found that her attorneys=
fees were necessary, reasonable, and just.@  In support of her argument, Flories points
out that APoag
invoked the Uniform Declaratory Judgments Act (the UDJA) in his Original and
First Amended Petitions and sought attorneys=
fees under the UDJA, section 37.009 of the Texas Civil Practice and Remedies
Code.@ 

In a
proceeding under the UDJA, a court may award Areasonable
and necessary attorney[s=] fees as are equitable and
just.@  Tex. Civ. Prac. & Rem. Code Ann. '
37.009 (Vernon 2008).  A trial court=s
award of attorneys= fees under the UDJA is
reviewed for an abuse of discretion.  See
Bocquet v. Herring, 972 S.W.2d 19, 20B21
(Tex. 1998). 








A
declaration under the UDJA is appropriate Ato
settle and afford relief from uncertainty and insecurity with respect to
rights, status, and other legal relations.@  Tex. Civ. Prac. & Rem. Code Ann. '
37.002(b) (Vernon 2008). However, a party may not recover attorneys=
fees under the UDJA when the only issues, aside from attorneys=
fees, concern clearing of title or trespass to try title.  AMC Mortg. Servs., Inc. v. Watts, 260
S.W.3d 582, 588 (Tex. App.CDallas
2008, no pet.); Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture,
981 S.W.2d 951, 956 (Tex. App.CHouston
[1st Dist.] 1998, pet. denied).  AAny
suit that involves a dispute over the title to land is, in effect, an action in
trespass to try title, whatever its form.@  Hawk v. E.K. Arledge, Inc., 107 S.W.3d
79, 84 (Tex. App.CEastland 2003, pet.
denied).  Because a claim for declaratory
relief is Amerely
incidental to the title issues,@ the
UDJA will not supplant a suit to quiet title by allowing attorneys=
fees under such circumstances.  Id.
(quoting John G. & Marie Stella Kenedy Mem=l
Found. v. Dewhurst, 90 S.W.3d 268, 289 (Tex. 2002)); Sw.
Guar. Trust, 981 S.W.2d at 957.

Here,
Poag brought a declaratory action seeking to Aquiet
title and/or acquire title to property.@  In his prayer, Poag sought a judgment A[d]eclaring
that the oil and gas lease executed by Defendant [Flories] is invalid and
unenforceable, ordering it removed from the title of the properties made the
subject of this litigation, and quieting title in [Poag]@.








In
substance, Poag=s claim for declaratory
relief is a claim to quiet title. Although Poag couches his declaratory action
in terms of a request for a declaration, everything he requests of the court is
necessary to, and a component of, the ultimate relief he seeks, which is to
clear the title on the two tracts of land he purchased from Anson.  When the essence of the suit is in trespass
to try title, attorneys= fees are not
recoverable.  Hawk, 107 S.W.3d at
84; see Sw. Guar., 981 S.W.2d at 957. 
Thus, as a matter of law, Flories was not entitled to an award of
attorneys=
fees under the UDJA.  See Sani v.
Powell, 153 S.W.3d 736, 746 (Tex. App.CDallas
2005, pet. denied) (concluding cross-appellant was not entitled to an award of
attorney=s
fees under the UDJA when cross-appellant=s
claim for declaratory relief was in substance a claim to quiet title).  Accordingly, the trial court did not abuse
its discretion by refusing to award Flories her attorneys=
fees.  We overrule Flories=s
sole issue on cross-appeal.

V. 
Conclusion

Having
overruled Poag=s
dispositive issues and having overruled Flories=s
sole cross-issue, we affirm the trial court=s
judgment. 

 

 

BOB MCCOY

JUSTICE

 

 

PANEL: 
WALKER, MCCOY, and MEIER, JJ.

 

DELIVERED:  July 1, 2010











[1]We note that even
Anson would be hard pressed to argue fraud or mutual mistake ten years after
the fact when the recorded deed expressly stated Asurface estate only.@  See Veterans Land Bd. v. Lesley, 281
S.W.3d 602, 624B25 (Tex. App.CEastland 2009, pet.
filed) (concluding alleged mutual mistakes of fact in grantors= deeds to grantee
were mistakes so plainly evident that limitations on grantors= claim to reform such
deeds was not tolled under the discovery rule, as the deeds were not ambiguous
and grantors should have known of the alleged mistakes when the deeds were
executed).